**UNITED ARTISTS ASSOCIATED, INC.,**
Plaintiff,

v.

**NWL CORPORATION, Defendant.**

United States District Court
S. D. New York.
May 24, 1961.

Phillips, Nizer, Benjamin, Krim &
Ballon, New York City, for plaintiff;
Louis Nizer, Gerald Mayer, Herbert N.

Bobrow, Neil A. Pollio, New York City, of counsel.

Cleary, Gottlieb, Steen & Hamilton, New York City, Cleary, Gottlieb, Steen & Ball and Smith & Pepper, Washington, D. C., for defendant; Fowler Hamilton, New York City, E. Stratford Smith, Washington, D. C., of counsel.

HERLANDS, District Judge.

Plaintiff's complaint (filed June 29, 1960) alleges [1] that defendant's reception, reproduction and distribution for a fee, of television broadcasting signals carrying telecasts of motion pictures owned by plaintiff constituted infringements of the copyrights owned by plaintiff or its assignor, Associated Artists Production Corp.; and [2] that said acts of defendant constituted unfair trade practices and unfair competition against plaintiff and interfered with lawful and advantageous business relationships between plaintiff and its potential licensees.

Plaintiff, a Delaware corporation having its principal place of business in New York City, is engaged in the licensing of motion pictures to television stations.

Defendant, a Delaware corporation having its executive office in New York City, has two West Virginia divisions, known as the Clarksburg Television Cable Company, Clarksburg, West Virginia, and the Fairmont Television Cable Company, Fairmont, West Virginia. Through these two divisions, defendant operates community antenna systems for television reception.

Two motions are before the Court. Defendant moves, pursuant to 28 U.S.C. § 1404(a) for a transfer of this action from this District to the Northern District of West Virginia. Plaintiff cross-moves, pursuant to Rule 12(f) F.R.Civ. P., 28 U.S.C., for an order striking from defendant's answer (paragraphs "40" to "45") its defenses of misuse of copyright, on the ground of legal insufficiency.

*The Motion to Transfer*

In support of its motion, defendant argues:

(1) A trial in the Southern District of New York will necessitate moving from the Northern District of West Virginia to New York all of defendant's books, records and files pertinent to the defense of this case. This would involve undue expense and cause substantial disruption of the conduct of defendant's business.

(2) The operation of the Clarksburg and Fairmont antenna systems will be drawn into question. A viewing of these installations is necessary in order to understand the manner in which the systems work. In addition, the Court should view the geographic area to appreciate the peculiarities attendant to television reception in hilly country.

(3) Defendant estimates that it will call approximately forty witnesses, almost all of whom reside in or near the Northern District of West Virginia, beyond the reach of the process of this Court. Approximately four of these are employees of defendant. Defendant has no connection with or control over the others, although they would be subject to subpoena in the Northern District of West Virginia. Trial in the Southern District of New York would entail substantial hardship for these witnesses and burdensome expense for defendant.

(4) If the action is tried in New York, the general manager of each operating division will have to be present throughout the trial, not only to testify but also to be available to counsel for advice and consultation. The general manager is the only employee of each division familiar with the day-to-day business operations and problems of the division and the only employee with authority to deal with such problems. Certain of the technical employees of the Clarksburg division would appear as witnesses and would also have to advise the attorneys during the trial as to the technical aspects of the company's operations. The only qualified technician of the Fairmont division would have the same functions to discharge at trial.

The absence of the managers and technical personnel would be unduly expensive and would cause substantial injury and great inconvenience to the company.

(5) The law of West Virginia will govern the trial of the issues of unfair competition, unfair trade practices and interference with advantageous business relationships. The United States District Court for the Northern District of West Virginia can be presumed to be most familiar with and expert in applying the law of West Virginia.

(6) The antennae immediately involved in this suit serve approximately 13,000 subscribers in the Northern District of West Virginia, and this litigation is of immediate concern to those viewers.

Plaintiff, in vindication of its choice of venue, argues:

(1) Defendant has failed to establish that its books and records required at the trial are voluminous or that they are required for the day-to-day operation of the West Virginia divisions.

(2) A view of the antenna system would not be useful. Even if such view were relevant, other less dramatic methods of proof are equally effective.

(3) Defendant fails to show that the testimony of its "approximately 40 witnesses" will be necessary and material. An examination of the matters as to which defendant claims the said testimony to be necessary reveals that most of such testimony would be irrelevant and that, as to the remaining items, many concern matters suitable only for expert testimony or testimony by defendant's own employees.

(4) No serious inconvenience will be caused to defendant's employees and business operations if the case is retained in New York.

(5) Defendant's claim that the venue should be transferred to enable the trial court to apply its home law should be given no weight since (a) the case involves primarily an interpretation of the federal copyright act; and (b) there has been no showing that the law of unfair competition in West Virginia is different from that of New York.

(6) The action and defenses herein do not concern localized controversies, but raise issues of nationwide interest and impact on the motion picture and television industries.

(7) The issues raised by the pleadings will require the presentation of evidence through witnesses residing in New York and also through books, records, negatives, and film prints located in New York. Approximately fifty of these witnesses are neither employed by nor controlled by plaintiff. Transfer would cause extreme hardship to plaintiff and seriously interfere with its presentation of proof at trial.

Under section 1404(a), the Court may transfer an action to a more suitable forum when the plaintiff's choice of forum, although permitted by a venue statute, probably will work a substantial hardship upon the defendant and the witnesses, which hardship cannot be justified by a showing of countervailing convenience or necessity on the plaintiff's part. United States v. General Motors Corporation, D.C.S.D.N.Y.1960, 183 F. Supp. 858, 860.

■ The Court must weigh the convenience of trial in New York as against trial in West Virginia. Peyser v. General Motors Corporation, D.C.S.D.N.Y. 1958, 158 F.Supp. 526.

■ Although a lesser showing of inconvenience is required for transfer under section 1404(a) than was formerly required for dismissal under the doctrine of *forum non conveniens* (Norwood v. Kirkpatrick, 1955, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789), the plaintiff's choice of forum should not be disturbed unless the balance of convenience and justice is strongly in favor of the defendant. Lykes Bros. Steamship Co., Inc. v. Sugarman, 2 Cir., 1959, 272 F.2d 679; United States v. General Motors Corporation, supra; National Tea Company v. The Marseille, D.C.S.D.N.Y.1956, 142 F.Supp. 415; Sokolowska v. National Airlines, Inc., D.C.S.D.N.Y.1954, 154 F. Supp. 376.

■ The burden of showing that the convenience of the parties and the interests of justice would be better served

in the other district is upon the movant. Peyser v. General Motors Corporation, supra; Robbins Music Corp. v. Alamo Music, Inc., D.C.S.D.N.Y.1954, 119 F. Supp. 29; Markantonatos v. Maryland Drydock Co., D.C.S.D.N.Y.1953, 110 F. Supp. 862.

■ The criteria to be considered are those expounded in Gulf Oil Corp. v. Gilbert, 1947, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055; Norwood v. Kirkpatrick, supra; Peyser v. General Motors Corporation, supra; United States v. General Motors Corporation, supra. See also Harry Winston, Inc. v. Zale Jewelry Co., D.C.S.D.N.Y.1961, 191 F.Supp. 686.

The principal factors are: (1) relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining willing witnesses; (4) the possibility of a view of the premises, if that would be appropriate; (5) all other practical problems that would make the trial of a case easy, expeditious and inexpensive; (6) the various public interests involved.

■ Defendant has failed to sustain its burden of establishing that the convenience of parties and witnesses and the interests of justice would best be served by the transfer of this action to the Northern District of West Virginia. The motion to transfer is denied.

*The Motion to Strike*

Whether and under what circumstances an action for copyright infringement may be maintained while the copyright is being misused by the owner is the issue raised by plaintiff's cross-motion.

Stated with greater particularity, the issue is: Does misuse of copyright bar an infringement action whether or not the misuse also violates the antitrust laws; and is the privilege to raise that defense grounded, not upon injury to defendant, but on the misused monopoly's unenforceability against anyone?

Plaintiff contends that, in a copyright infringement action, it is no defense that plaintiff has misused its copyright or in any other way violated the antitrust laws, especially where plaintiff's alleged misconduct is unconnected with the matter in litigation, where it has not prejudiced defendant, and where the granting of relief to plaintiff would not make the Court a party to the misuse.

■ As a general rule, it is not a defense to a copyright infringement action to allege that plaintiff is violating the antitrust statutes by a combination or conspiracy in restraint of trade. See Harms v. Cohen, D.C.E.D.Pa.1922, 279 F. 276; M. Witmark & Sons v. Pastime Amusement Co., D.C.E.D.S.Car.1924, 298 F. 470, affirmed 4 Cir., 1924, 2 F.2d 1020; Vitagraph, Inc. v. Grobaski, D.C. W.D.Mich.N.D.1931, 46 F.2d 813; Buck v. Spanish Gables, Inc., D.C.D.Mass.1938, 26 F.Supp. 36; Buck v. Newsreel, Inc., D.C.D.Mass.1938, 25 F.Supp. 787; Society of European Stage Authors and Composers, Inc. v. WCAU Broadcasting Co., D.C.E.D.Pa.1940, 35 F.Supp. 460; Buck v. Cecere, D.C.W.D.N.Y.1942, 45 F. Supp. 441; Harms, Inc. v. Sansom House Enterprises, Inc., D.C.E.D.Pa.1958, 162 F.Supp. 129, affirmed sub nom. Leo Feist Inc. v. Lew Tendler Tavern, Inc., 3 Cir., 1959, 267 F.2d 494.

In Morton Salt Co. v. G. S. Suppiger Co., 1942, 314 U.S. 488, 493, 494, 62 S. Ct. 402, 405, 86 L.Ed. 363, the respondent brought suit (for an injunction and an accounting) alleging infringement of its *patent* on a machine for depositing salt tablets. The District Court, granting summary judgment dismissing the complaint, took the position that respondent was making use of the patent to restrain the sale of salt tablets in competition with its own unpatented tablets by requiring licensees to use with the patented machine only tablets sold by respondent. The Court of Appeals reversed on the ground that respondent's use of the patent was not shown to violate the Clayton Act.

The Supreme Court stated that the question to be decided was not whether respondent had violated the Clayton Act. Instead, the Supreme Court formulated the dispositive issue as whether a court

of equity would lend its aid to protect the patent monopoly when respondent was using it as the effective means of restraining competition with its sale of an unpatented article. In refusing to grant such aid to the patent holder, the Court declared:

"Where the patent is used as a means of restraining competition with the patentee's sale of an unpatented product, the successful prosecution of an infringement suit even against one who is not a competitor in such sale is a powerful aid to the maintenance of the attempted monopoly of the unpatented article, and is thus a contributing factor in thwarting the public policy underlying the grant of the patent. Maintenance and enlargement of the attempted monopoly of the unpatented article are dependent to some extent upon persuading the public of the validity of the patent, which the infringement suit is intended to establish. Equity may rightly withhold its assistance from such a use of the patent by declining to entertain a suit for infringement, and should do so at least until it is made to appear that the improper practice has been abandoned and the consequences of the misuse of the patent have been dissipated. * * *

"It is the adverse effect upon the public interest of a successful infringement suit, in conjunction with the patentee's course of conduct, which disqualifies him to maintain the suit, regardless of whether the particular defendant has suffered from the misuse of the patent. * * *

"The patentee like these other holders of an exclusive privilege granted in the furtherance of a public policy, may not claim protection of his grant by the courts where it is being used to subvert that policy."

■ While a court of equity will withhold relief against even a stranger to the misuse, where the patentee is using the *patent* privilege contrary to the public interest [see Morton Salt Co. v. G. S. Suppiger Co., supra; Mercoid Corporation v. Mid-Continent Investment Co., 1944, 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376; Mercoid Corporation v. Minneapolis-Honeywell Regulator Co., 1944, 320 U.S. 680, 64 S.Ct. 278, 88 L.Ed. 396], it is a substantial question whether a like rule, invokable in the same manner, is applicable to an action for infringement of *copyright*.

In M. Witmark & Sons v. Jensen, D.C. Minn. 4th Div.1948, 80 F.Supp. 843, 850, appeal dismissed 8 Cir., 1949, 177 F.2d 515, plaintiffs, owners of musical composition copyrights, alleged that defendants, operators of motion picture theatres, gave public performances of their compositions without a license. The evidence before the Court established infringement. The Court, however, denied relief to plaintiffs. The Court found that ASCAP, of which plaintiffs were members, held a monopoly on music integrated in sound movies and that, through ASCAP, plaintiffs extended their copyrights beyond their grant. The Court found that plaintiffs tied their copyrights with other copyrighted music and that they were in violation of the Sherman Act. The Court stated:

"Public interest transcends plaintiffs' rights under their copyrights, and where the granting of the relief sought would serve to continue the unlawful practices here condemned, it should be withheld. One who unlawfully exceeds his copyright monopoly and violates the anti-trust laws is not outside the pale of the law, but where the Court's aid is requested, as noted herein, and the granting thereof would tend to serve the plaintiffs in their plan and scheme with other members of Ascap to extend their copyrights in a monopolistic control beyond their proper scope, it should be denied. In view of the Court's finding that the copyright monopoly has been extended, it is not neces-

sary to determine whether antitrust violations alone would deprive plaintiffs of the right of recovery."

In Alfred Bell & Co., Ltd. v. Catalda Fine Arts, Inc., D.C.S.D.N.Y.1947, 74 F. Supp. 973, 978, affirmed 2 Cir., 1951, 191 F.2d 99, 106, defendants infringed plaintiff's copyright on eight mezzotint engravings of old masters. The Court granted plaintiff relief in spite of its findings (1) that plaintiff had contracted with other members of the Fine Arts Guild to limit production of each of the engravings to a specified number and to maintain a minimum price; and (2) that such agreement was one in restraint of trade. District Judge (now Circuit Judge) J. Joseph Smith considered the misuse of patent cases and stated that refusal of the aid of the court on the facts before it might be thought to accord with their theory. However, "similar destruction of copyright monopoly for its misuse in violation of the Sherman Act, as in this case, * * * has been refused consistently by the courts with the sole exception of Buck v. Gallagher, [D.C., 36 F.Supp. 405] * * * the remedy under the anti-trust acts being held exclusive." The Court held the defense under the Sherman Act to be insufficient in law.

The Court of Appeals did not explicitly hold that the defense of misuse of copyright in violation of the Sherman Act either was or was not sufficient in law. The Court of Appeals concluded, however, that the defendants had failed to establish the defense. Judge Frank then pointed out:

"We have here a conflict of policies: (a) that of preventing piracy of copyrighted matter and (b) that of enforcing the antitrust laws. We must balance the two, taking into account the comparative innocence or guilt of the parties, the moral character of their respective acts, the extent of the harm to the public interest, the penalty inflicted on the plaintiff if we deny it relief." [191 F.2d 106.]

The insufficiency of the defense of misuse of copyright is not clearly apparent in the case at bar. The motion to strike under Rule 12, F.R.Civ. P. "is not intended to furnish an opportunity for the determination of disputed and substantial questions of law." 1A Barron & Holtzoff, Federal Practice and Procedure, section 369 at 508 (Rules ed. 1960); see United States v. 113.81 Acres of Land, D.C.N.D.Cal.N.D.1959, 24 F.R. D. 368; Sanitized, Inc. v. S. C. Johnson & Sons, Inc., D.C.S.D.N.Y.1959, 23 F.R. D. 230; Lopez v. Resort Airlines, Inc., D.C.S.D.N.Y.1955, 18 F.R.D. 37; 2 Moore's, Federal Practice Para. 12.21[3] (2d ed 1960).

Furthermore, a determination of the effect of plaintiff's alleged misuse of copyright on its action for infringement requires a delicate balancing of competing public policies in an area of the law that is yet evolving. See Alfred Bell & Co., Ltd. v. Catalda Fine Arts, Inc., supra. Under all the circumstances, a definitive adjudication should be made only after a plenary hearing. Plaintiff's motion is denied without prejudice.

The motion and cross-motion are denied. This opinion and decision constitute an order.