STRUTHERS SCIENTIFIC AND INTER-
NATIONAL CORPORATION and
Struthers Wells Corporation, Plaintiffs,

v.

GENERAL FOODS CORPORATION,
Defendant.

Civ. A. Nos. 3665, 3850.

United States District Court,
D. Delaware.

Dec. 17, 1971.

See, also, 51 F.R.D. 149.

Edmund N. Carpenter, II, and Robert
H. Richards, III, of Richards, Layton &
Finger, Wilmington, Del., James F.
Weiler and Dudley R. Dobie, Jr., of Ful-
bright, Crooker & Jaworski, Houston,
Tex., William A. Drucker and Peter L.
Tailer, New York City, and Jay M. Can-
tor, Washington, D. C., of counsel, for
plaintiffs.

Arthur G. Connolly, James M. Mulli-
gan, Jr., and Paul E. Crawford, of Con-
nolly, Bove & Lodge, Wilmington, Del.,
and Michael J. Quillinan, White Plains,
N. Y., of counsel, for defendant.

## OPINION

LATCHUM, District Judge.

In this patent litigation, Struthers
Scientific and International Corporation
and Struthers Wells Corporation (collec-
tively "Struthers") have moved to
amend and supplement the complaint in
C.A. 3665 and to supplement the com-
plaint in C.A. 3850. General Foods Cor-
poration ("GF") vigorously opposes
both motions.

*Motion To Amend Complaint In C.A.
3665*

C.A. 3665 is a consolidation of two
non-jury cases filed by Struthers in
Texas in 1968 and transferred here on
January 30, 1969 becoming C.A. Nos.
3665 and 3666 in this Court. As trans-
ferred and at the time of consolidation
for trial on March 17, 1969, the com-
plaint in C.A. 3665 contained a count
alleging infringement of Struthers' U.S.
Patent 3,381,302. The complaint in C.A.
3666 contained a count alleging in-
fringement of Struthers' U.S. Patent
3,404,007. Both complaints also included
an unfair competition count alleging
misuse of Struthers' trade secrets
through alleged incorporation thereof in
GF's patents and patent applications.

Struthers proposes to amend the com-
plaint in C.A. 3665 by substituting new

Counts 1 and 2. Proposed Count 1 adds nothing to the present allegations of the complaint; it simply reflects the consolidated nature of C.A. 3665 and C.A. 3666 which was accomplished by Court order on March 17, 1969.[1]

Proposed Count 2, relating to the original unfair competition charges, not only includes the allegations currently made in the present complaint but attempts to more particularly set forth GF's activities which allegedly constitute unfair competition. Struthers contends that the new Count 2 "allegations are intended to more closely conform to the current state of the discovery record in the litigation and to track the unfair competition allegation of C.A. 3850 to bring all allegations of unfair competition into conformity." GF, on the other hand, points out that proposed Count 2 adds a broader charge that GF wrongfully filed patent applications not only in this country but also in foreign *countries*. The specificity of this latter allegation does not appear in C.A. 3850.

■ While the Court recognizes that amendments are allowed with liberality, it does not appear that proposed Counts 1 and 2 in C.A. 3665 should be permitted. This is so because the proposed counts add nothing to the pleadings in the case. They merely add to the paper record which has already reached an almost unmanageable point. The case has been pending for three and a half years. A trial date has already been set. If the pleadings and issues are to be more sharply defined at this late stage that should be accomplished in the Pre-trial Stipulation and Order as required by Rule 11, U.S. Dist. of Del. Court Rules. Accordingly, Struthers' present motion to amend the complaint in C.A. 3665 by the proposed Counts 1 and 2 will be denied.

*Supplementing The Complaints in C.A. 3665 and 3850*

■ Proposed Count 3 in C.A. 3665 is an antitrust count. It charges GF with the violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, by filing an application for a patent in the U.S. Patent Office and fraudulently inducing the Patent Office to declare an interference with Struthers' '007 patent. Proposed Count 4 is a common law fraud count. It is completely interrelated with proposed Count 3, and is brought under the Court's pendent jurisdiction.

The supplemental complaint in C.A. 3850 likewise contains a similar antitrust Count 3 and a pendent jurisdiction common law fraud Count 4 essentially paralleling those in proposed Counts 3 and 4 of C.A. 3665. At issue in C.A. 3850, however, is Struthers' U.S. Patent 3,495,522, which issued February 17, 1970 containing the same disclosure as the '007 patent but with claims directed to freeze concentration and freeze drying *apparatus,* rather than the *process* to which the '007 patent claims are directed.

Struthers charges that GF's fraudulent conduct relates to (1) The "Bowden Et Al application" filed in the names of GF employees, Bowden and Gottersman, on November 26, 1962, and abandoned in 1965 and (2) the "Clinton Et Al streamline continuation application" filed May 20, 1969 (based on a now abandoned parent application filed May 5, 1965) in the names of GF employees, Clinton, Johnson, Meyer, Pfluger and Jacobs,[2] which is still pending in the Patent Office. Struthers contends that GF, the corporation, can not be the inventor and that the employees who GF caused to swear that they were the original and true inventors in the Clinton Et Al application were not the first inventors at all, that GF knew this when it requested

---

1. Struthers' original proposed amended and supplemental complaint in C.A. 3665 by oversight omitted reference to the '302 patent (Docket Item 196). When the oversight came to Struthers' attention during briefing, Struthers proposed to again amend Court 1 to refer to the '302 patent. (Ex. A to Docket Item 215).

2. Jacobs' name was added as an inventor in 1968 pursuant to a verified showing under Patent Office Rule 45.

the Patent Office to declare the interferences because GF was aware of the earlier work of its employees Bowden Et Al, described in the application which GF permitted to become abandoned. Thus, the fraud alleged is that GF falsely represented to the Patent Office that Clinton Et Al were the true inventors for the purpose of provoking the '007 and '552 interferences the consequence of which has placed a cloud on both of Struthers' patents.

GF argues that the proposed supplemental antitrust Count 3 in both civil actions should be disallowed because they show on their face that they are legally insufficient to state a cause of action under Section 2 of the Sherman Act. Chapman v. Sheridan-Wyoming Coal Co., 338 U.S. 621, 70 S.Ct. 392, 94 L.Ed. 393 (1950); American Securit Co. v. Shatterproof Glass Corp., 166 F.Supp. 813, 827 (D.Del.1958), aff'd 268 F.2d 769 (1959), cert. den. 361 U.S. 902, 80 S.Ct. 210, 4 L.Ed.2d 157 (1959). This is so, says GF, because no patents have issued to GF which Struthers claims are tainted with fraud as a result of the interference proceedings.

Struthers' proposed antitrust counts are loosely patterned on the line of cases following the landmark decision of Walker Process Equipment, Inc. v. Food Machinery & Chemical Co., 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965). In the *Walker Process* case and those following, the *sine qua non* of a Sherman Act violation was *fraud in the procurement of a patent which subsequently issued and was being enforced* by the defendant in the action. Neither of these essential elements of a Sherman Act offense is present or pleaded in Count 3 in either civil action, and these counts are legally insufficient to state a Section 2 Sherman Act cause of action.

In *Walker Process*, the United States Supreme Court for the first time recognized that the enforcement of a patent procured by fraud on the Patent Office could serve as a basis for an affirmative cause of action for treble damages[3] under Section 2 of the Sherman Act, provided the other elements of a Section 2 case were present. Prior to *Walker Process*, as the Supreme Court noted, "fraudulent procurement" of a patent was a valid defense to an infringement action (382 U.S. at 176, 86 S.Ct. 347), but it had never before been recognized as an element of an affirmative antitrust claim. The Supreme Court's opinion made it clear, however, that the *sine qua non* of a Section 2 Sherman Act violation depends upon the prerequisites of a *fraudulent procurement and enforcement of a patent*. The Supreme Court stated:

"We have concluded that the *enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act* provided the other elements necessary to a § 2 case are present. In such event the treble damage provisions of § 4 of the Clayton Act would be available to an injured party." (382 U.S. at 174, 86 S.Ct. at 349).

\* \* \* \* \* \*

"The gist of Walker's claim is that since Food Machinery obtained its patent by fraud it cannot enjoy the limited exception to the prohibitions of § 2 of the Sherman Act, but must answer under that section and § 4 of the Clayton Act in treble damages to those injured by *any monopolistic action taken under the fraudulent patent claim*. . . . It must be remembered that we deal only with a special class of patents, *i. e., those procured by intentional fraud*." (382 U.S. at 176, 86 S.Ct. at 350).

\* \* \* \* \* \*

"To establish monopolization or attempt to monopolize a part of trade or commerce under § 2 of the Sherman Act, *it would then be necessary to appraise the exclusionary power of the illegal patent claim in terms of the*

---

3. Section 4 of the Clayton Act, 15 U.S.C. § 15, allows the recovery of threefold damages for antitrust violations.

*relevant market for the product involved."* (382 U.S. at 177, 86 S.Ct. at 350) (Emphasis added).

This carefully chosen language of the Supreme Court makes it perfectly clear that it is "the *enforcement* of a patent *procured* by fraud on the Patent Office" that is a necessary precondition to possible Section 2 Sherman Act liability. It is not the mere obtaining of a fraudulent patent which brings antitrust liability to its owner; it is the assertion or enforcement of the issued patent acquired by fraud which creates antitrust liability.

This was succinctly pointed out in the Journal of the Patent Office Society, (July, 1971), Vol. 53, No. 7, pp. 423, 434–435, where it was stated:

> *"Walker* and the cases dealing with the antitrust implications of a fraud upon the Patent Office made it clear that a necessary condition for such liability is that the inherent monopoly in the fraudulently acquired patent grant be exercised by asserting, enforcing, or otherwise using the patent to exclude others and thus have an anti-competitive effect on the relevant market."

> \*     \*     \*     \*     \*     \*

> "Inherent in the patent grant is the statutory monopoly right to exclude others from making, using, or selling the invention. *Yet, it is not the mere existence of the patent—however fraudulently it has been obtained—which brings antitrust liability to its owner; it is the owner's assertion or enforcement of the patent which brings on the antitrust liability.* . . . A patent may dominate a significant part of trade or commerce by its claims, yet if its owner did not enforce it and gave royalty-free non-exclusive licenses to all who wished them, it is doubtful if the owner

would be subject to antitrust liability. . . ." (Emphasis added).

In Beckman Instruments, Inc. v. Chemtronics, Inc., 328 F.Supp. 1132 (W.D.Tex.1971), the Court also stated:

> "The Court of Appeals noted (428 F.2d [555] at p. 566, footnote 24) that the Supreme Court in Walker Process had stated that the patentee must have *obtained* the patent through fraudulent means." (Emphasis by the Court).

Proposed Counts 3 in these cases clearly show that GF has not obtained or been granted a patent as a result of its accused conduct so there can not possibly be an "enforcement" of an alleged fraudulent patent in an attempt to monopolize "trade or commerce among the several states." Count 3 in both civil actions fails to state an antitrust claim upon which relief can be given and should be disallowed.

This does not mean, however, as Struthers contends, that a fraud must go without remedy until it has been "fully perpetrated" by the issuance of an illegal patent. The fraud charges proposed here have been made also in the interference proceedings in the Patent Office, and the Patent Office Tribunals and the Court of Custom and Patent Appeals have full power to deal with any alleged fraud prior to the issuance of a patent. Norton v. Curtiss, 433 F.2d 779, 792 (C.C.P.A.1970).

Proposed Counts 3 in both civil actions are legally insufficient to support Section 2 Sherman Act antitrust claims and should not be allowed. Since Counts 4 in both actions depend on pendent jurisdiction related to Counts 3, those counts should also be disallowed.

Accordingly, an order will be entered denying Struthers' motion to amend and supplement the complaint in C.A. 3665 and to supplement the complaint in C.A. 3850.