## VOGUE RING CREATIONS, INC.

v.

## William A. HARDMAN, Jr. d/b/a Royal of America.

### Civ. A. No. 74–191.

United States District Court, D. Rhode Island.

Feb. 25, 1976.

Max Schwartz, Providence, R. I., for plaintiff.

Elliot A. Salter, Salter & Michaelson, Providence, R. I., for defendant.

## OPINION

PETTINE, Chief Judge.

This is an action pursuant to 17 U.S. C.A. § 1 *et seq.*, for copyright infringement and unfair competition relative to a copyright for a finger ring granted to the plaintiff by the U. S. Copyright Office. Jurisdiction is founded upon 28 U.S.C. § 1338(a), (b).

The defendant concedes infringement but counters with copyright invalidity, misuse, and violations of the anti-trust laws.

The plaintiff, Vogue Ring Creations, Inc., is a corporation duly organized and existing under the laws of the State of Rhode Island and having a regular and established place of business in Providence, Rhode Island, and is engaged in the design, manufacture, and sale of finger rings under the trademark "VOGUE".

The defendant is a resident of Rhode Island, conducting a ring manufacturing business in said state.

### Findings of Fact

Since 1971 a business firm, known and doing business as The House of Camelot, Inc., advertised, on a national scale through more than a million fliers, and sold a finger ring, "Exhibit B", which was at the time the complained of defendant's acts took place, in the public domain. In 1972, the plaintiff, at the request of The House of Camelot, Inc., manufactured for it this ring ("Exhibit B") and sometime thereafter, in 1973, commenced to manufacture for itself the copyrighted ring (GP85430—first publication January 23, 1973), "Exhibit 2", which is the subject of this law suit and which it sold to Friendly Home Parties, Inc., as one of its customers. The plaintiff placed the copyright notice on all of its rings.

The defendant duplicated the plaintiff's copyrighted ring ("Exhibit 2") on or about August of 1973 and sold a total of 1,018 dozen for $4,428.50 to various firms including Friendly Home Parties, Inc. However, since about November 1973, it has terminated all manufacture and sale of the ring.

Subsequent to the commencement of this action, the plaintiff, without advice or assistance of counsel, composed and published a "copyright warning" which appeared in the Business Weekly section of The Providence Sunday Journal, a newspaper published and distributed in Rhode Island.[1] The facts will be more fully developed in the discussions of the legal issues at stake.

### The Copyright

The applicable law to obtain a valid copyright is well settled. Judge Goldberg, writing for the court in *Donald v. Zack Meyer's T.V. Sales and Service*, 426 F.2d 1027 (5th Cir. 1970), clearly expressed it in the following language:

"It is settled law that to obtain a valid copyright, as distinguished from a patent, the applicant need not show that the material in question is unique or novel; it need only be original. *Gelles-Widmer Co. v. Milton Bradley Co.*, 7 Cir. 1963, 313 F.2d 143, cert. denied, 373 U.S. 913, 83 S.Ct. 1303, 10 L.Ed.2d 414; *Alfred Bell & Co. v. Catalda Fine Arts*, 2 Cir. 1951, 191 F.2d 99. Thus a work may be protected by copyright even though it is based on a prior copyrighted work or something already in the public domain if the author, through his skill and effort, has contributed a distinguishable variation from the older works. *Gelles-Widmer Co. v. Milton Bradley Co., supra; Millworth Converting Corp. v. Slifka*, 2 Cir. 1960, 276 F.2d 443; *Alfred Bell & Co. v. Catalda Fine Arts, supra*. In such a case, of course, only those parts which are new are protected by the new copyright. *Dorsey v. Old Surety Life Ins. Co.*, 10 Cir. 1938, 98 F.2d 872.

In determining the amount of originality required it is frequently stated that the standards are minimal and that in copyright law 'originality means little more than a prohibition against copying.' *Gelles-Widmer Co. v. Milton Bradley Co., supra*. *Day-Brite Lighting, Inc. v. Sta-Brite Fluorescent Manufacturing Co.*, 5 Cir. 1962, 308 F.2d 377; *Alfred Bell & Co. v. Catalda Fine Arts, supra*. Nevertheless, something more than merely refraining from outright copying is required before a new variation on an old work has sufficient originality to

1. "WARNING!!

'To those who may copy our copyright designs, there is now pending in the U.S. DISTRICT COURT, a suit against two companies of Rhode Island for alleged infringement of copyright!' The statutory penalty under the U.S. CODE TITLE # 17 is, under Chapter 2, # 101, the first, Ten Dollars, and under the second, One Dollar, for each copyrighted ring made, or sold by, or found in the possession of the infringer or his agents or employees!! The infringer is also liable for court costs and attorneys fees.
We will invoke this law to its utmost!
  DAVID SORGMAN, President
  Vogue Ring Creations, Inc."

be copyrightable. The author must add 'some substantial, not merely trivial, originality.' *Chamberlin v. Uris Sales Corp.*, 2 Cir. 1945, 150 F.2d 512, 513. The variation must be meaningful and must result from original creative work on the author's part. *Amsterdam v. Triangle Publications, Inc.*, 3 Cir. 1951, 189 F.2d 104; *Andrews v. Guenther Publishing Co.*, S.D.N.Y. 1932, 60 F.2d 555, *Jeweler's Circular Publishing Co. v. Keystone Publishing Co.*, 2 Cir. 1922, 281 F. 83, cert. denied, 259 U.S. 581, 42 S.Ct. 464, 66 L.Ed. 1074; *McIntyre v. Double-A Music Corp.*, S.D.Cal.1959, 179 F.Supp. 160; *Alva Studios, Inc. v. Winninger*, S.D. N.Y.1959, 177 F.Supp. 265; *Smith v. George E. Muehlebach Brewing Co.*, W.D.Mo.1956, 140 F.Supp. 729. As the court said in *Smith,*

> ' "Originality" in the above context means that the material added to what is in the public domain, must have aspects of "novelty" and be something more than a trivial addition or variation. Cf. *Chamberlin v. Uris Sales Corporation*, 2 Cir., 150 F.2d 512. If what is added does not itself give some value to a public domain composition, or serve some purpose other than to merely emphasize what is present and subsisting in the public domain, it is not entitled to copyright. * * * ' 140 F.Supp. at 731." *Id.* at 1029, 1030.

■ The defendant contends that the plaintiff's copyright is invalid. The merit of this contention rests on whether or not the plaintiff's copyrighted ring ("Exhibit 2") meets the standard as expressed in *Donald v. Zack Meyer's T.V. Sales and Service, supra.* When compared with The House of Camelot ring ("Exhibit B"), I conclude it does not. I do not find that the idea expressed in "Exhibit 2" achieves "a sufficiently distinguishable variation," nor do I find that it contains, "some substantial, not merely trivial originality." *Concord Fabrics Inc. v. Generation Mills, Inc.*, 328 F.Supp. 1030 (S.D.N.Y.1971).

To begin with, when compared in their entirety, to me, the treatment of the basic design is the same. True, the bottom edge of "Exhibit B" has a rope design resulting in a somewhat even, smooth circle as against the scalloped bottom edge conforming to the shape of the settings in "Exhibit 2". However, I find this to be a trivial difference, neither adding, detracting, or affecting the motif of the ring; the fact that "Exhibit B" has "a general antique effect" as against the "more modern and rich looking" "Exhibit 2", as plaintiff contends, was considered by this court, even though it may be argued color as such is not copyrightable; and, even with this consideration, I cannot find "differences affecting the feeling quality and sensory impact of the whole", *Slifka v. Citation Fabrics Corp.*, 329 F.Supp. 1392, 1393 (S.D.N.Y.1971). I also weighed the plaintiff's argument that the width and shape of the rings are different, *i. e.* "Exhibit B" is high and dome-like, whereas, "Exhibit 2" is wider and more flat, but was unimpressed.

To be sure, there are these differences, but it is my opinion and finding that they are trivial and meaningless, utterly devoid of any "original creativity". I make this finding fully sensitive to the minimal standards required by the copyright law.

It seems to this writer the following language is fully applicable to the situation at hand:

> "It remains plain that 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same'." *Couleur International Ltd. v. Opulent Fabrics, Inc.*, 330 F.Supp. 152, 154 (S.D.N.Y. 1971) (citations omitted).

"[T]he deviations came across vividly as [a] studied effort" and I am constrained to conclude the copyright is invalid.

Though this finding may be dispositive, I will, in the interest of completeness, discuss the other issues raised by the litigants.

## Unfair Competition

Paragraph 14 of the plaintiff's Bill of Complaints alleges, in substance, that the defendant manufactured or caused to be manufactured and sold, copies of the plaintiff's ring "with the intent and purpose to pass off said copies as and for" the plaintiff's original, or to "encourage or permit" others to engage in the same practice. In support of this allegation it offers the testimony of David Sorgman, president and sole stockholder of the plaintiff corporation, and certain testimony of the defendant, as recited below.

Mr. Sorgman stated that Friendly Home Parties negotiated a purchase with the plaintiff for 700 dozen of its copyrighted rings to be shipped in two installments of 350 dozen each. Following the shipment of the first 350 dozen, the plaintiff received, in September 1973, a cancellation order on the balance.

The defendant, William A. Hardman, Jr., testified that he was asked by a customer if he could make the copyrighted ring in question, which he did, but, at the time, had no idea whether it had on it a notice of copyright; he did not look for one; that he discontinued manufacturing the ring when, "[he] understood there was some kind of involvement . . ."; however, he assumes he saw a Vogue ring; he manufactured and sold 198 dozen of the rings to Friendly Home Parties between September 19, 1973, and November 8, 1973.

On these facts the plaintiff contends that the defendant is guilty of unfair competitive practices.

The "passing off" theory, which the plaintiff claims, is not supported by the evidence.

"Prohibitions against 'passing off' were rationalized as a common-law development which sought to enforce a standard of fair dealing in the market place. It was considered unfair and unethical to take business away from a competitor *by passing off one's goods as the goods of a competitor.* This ethical reaction has become firm-

ly entrenched as a rule of law." J. Thomas McCarthy, *Trademarks and Unfair Competition,* sec. 7:24 (emphasis added.)

It must be proved that the defendant attempted, "to induce customers to believe that his products are actually those of another. . . . It has been said that 'traditionally a plaintiff complaining of "palming off" must prove the perpetration of fraud, "i. e., that the defendant is so foisting his product on the market that there is resulting confusion or likelihood of confusion as to its source in the mind of the buying public." . . .'" *Remco Industries, Inc. v. Toyomenka, Inc.,* 286 F.Supp. 948, 954 (S.D.N.Y.1968) (citations omitted).

It is well established that copying another's article is not, standing alone, unfair competition. It must be shown that the defendant so confusingly presented his product through packaging, labeling or otherwise as to lead purchasers to believe they were buying the plaintiff's article.

The courts' teachings, in this regard, have been expressed in a number of decisions. In *Key West Hand Print Fabrics, Inc. v. Serbin, Inc.,* 244 F.Supp. 287, 292 (S.D.Fla.1965), we find:

"There was no showing that the defendant palmed off its dresses as being the product of the plaintiff or misrepresented to the public that it manufactured 'Lilly's' . . . While the defendant *knowingly* copied plaintiff's design and color combinations [copyrighted] and used them in making dresses and sold them at a price lower than the plaintiff did, this does not constitute unfair competition." (Citations omitted; emphasis added.)

Returning to *Remco Industries, Inc. v. Toyomenka, Inc., supra* at 952, we read:

"Assuming, however, that defendants' products would have the same visual impact on a consumer, it is clear that the mere manufacture and sale of an exact copy of an unpatented design does not itself constitute unfair com-

petition. See *Sears Roebuck & Co. v. Stiffel*, 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964); *Compco Corp. v. Day-Brite Lighting*, 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964). See also *Feathercombs, Inc. v. Solo Prods. Corp.*, 306 F.2d 251, 257 (2d Cir.), cert. denied, 371 U.S. 910, 83 S.Ct. 253, 9 L.Ed.2d 170 (1962)." (Other citations omitted.)

And in the same case, *id.* at 955, the court said:

> "The inference of intent to deceive that plaintiff seeks to draw from copying is not a permissible one and plaintiff's theory that palming off may be inferred from mere copying is erroneous."

■ In the present controversy there is no evidence in the record which even remotely proves that the defendant attempted to "pass off" his ring as that of the plaintiff; there is nothing to show that the defendant, in manufacturing and selling his ring, created confusion as "to its source" in the mind of the buyer. The defendant did not attempt, in any way, to misrepresent the origin of manufacture or sale.

The plaintiff's claim of unfair competition is hereby denied.

### Copyright Misuse

The defendant has affirmatively pleaded as a defense, that the plaintiff, "is guilty of willful misuse of its copyright." He complains that the plaintiff published a false and misleading "copyright warning".

He also argues, "since the plaintiff itself was one of the manufacturing sources of the 'Exhibit B' ring, previously made and sold by The House of Camelot, Inc., obviously, plaintiff was aware of the prior existence of the 'Exhibit B' ring when it first published its 'Exhibit 2' ring on January 23, 1973, with the statutory notice of copyright affixed thereto. It, therefore, was encumbent on plaintiff, when it filed its application for copyright registration, to fill in Item # 7 in the application in order to inform the Copyright Office that there was a previous publication of the work and further pointing out to the Copyright Office just what the nature of the new matter was in the plaintiff's version, so that the Copyright Office could then determine whether the changes were sufficient to justify the granting of a new registration to plaintiff. However, plaintiff left Item # 7 blank . . ." Defendant's brief at 20, 21. Item 7 of the form reads:

"Was work previously registered? Yes .... No ....
  Date of Reg. .... Reg. No. ....
Was work previously published? Yes .... No ....
  Date of Reg. .... Reg. No. ....
Is there any *new matter* in this version?
  Yes .... No .... If your answer is 'Yes' give a brief general statement of the nature of the *New Matter* in this version."

■ The equitable maxim of unclean hands is applicable in determining the enforceability of copyright registrations; and it has been held, in a suit challenging the copyright of a brochure, to be inequitable conduct not to inform the Copyright Office of earlier publications.

> "The Court finds that as to this defendant in connection with defendant's manufacture, sale and marketing of its device, the plaintiff's design patent and copyright registrations are unenforceable due to plaintiff's unclean hands and inequitable conduct in connection therewith.
>
> A substantial portion of Plaintiff's copyrighted material incorporates text and photographs that were previously published and copyrighted by Plaintiff in 1954 and 1955 in connection with its earlier Infra-Massage device . . . Plaintiff did not inform the Copyright Office of its earlier publications in its application to register the copyrights here in suit. That part of the copyright application, Item 7, which requires a listing of the 'New Matter In This Version' of the material sought to be copyrighted was left blank by Plaintiff in each of the copyright certificates in suit." *International Biotical Corp. v. Associated Mills, Inc.*, 239 F.Supp. 511, 514 (N.D.Ill.1964).

The plaintiff in this case left Item # 7 in the copyright application blank. This was not an insubstantial omission when one considers the identical nature of the two rings. If this item had been completed, the Copyright Office would have had the opportunity to evaluate whether or not the plaintiff had made any copyrightable changes.[2]

■ The thrust of the plaintiff's answer to this accusation is that the plaintiff did not design, sell, or otherwise distribute or publish "Exhibit B"; the ring was made on a job basis for The House of Camelot; and that, "[i]tem 7 is specifically designed for cases where a first copyright is obtained and then, after some changes, a second is applied for."

The plaintiff interprets item 7 too narrowly. The very instruction, recited for item 7, reading, "If any substantial part of this work *has been previously published* . . .", is not restricted to the author's conduct. To be so it would need additional qualifying words such as "by you or . . ." and such other parties of interest as the Copyright Office would want listed. The very purpose of item 7 is not entirely unlike the prior art requirement in patents. It is to enlighten the Copyright Office, so

2. I find the following testimony of Mr. Sorgman, president of the plaintiff company, highly suspect in light of the fact he was the very person who manufactured and sold "Exhibit B", the source of the ring he attempted to copyright, to The House of Camelot in 1972. It did conceal from the Copyright Office a fact which could have seriously jeopardized obtaining a copyright.

"Q. Still, directing your attention to the copyright application identification, you will notice that the application contains a section under the Number 7. It talks about 'Previous registration or publication.' It says, 'Was work previously registered?' Then there is a 'yes' or 'no' to be filled in. You did not fill any of that in. So to the best of your knowledge, this work was never registered before you filed?
A. That's right, right.
Q. Then it says, 'Was worked [work] previously published?' Again, there is a 'yes,' or 'no' and again, you didn't fill it in. To the best of your knowledge, there was no publication of this work prior to January 23, 1973?
A. Right.
Q. Then it says, 'Is there any substantial new matter in this version?' Then again, 'yes' or 'no' and you again didn't fill it in?
A. Right.
Q. And then under that is, 'Give a brief general statement of the nature of the new matter in this version,' and again nothing is filled in?
A. Right.
Q. So, since you didn't fill in any of that material, it was, at the time you filed this application, your understanding, and correct me if I am wrong, that the entire design of this ring was novel at the time you filed it. There had been no prior publication of a ring that embodied the design characterized by this ring. This was really a new design?
A. Right.
Q. And of course, you are aware, are you not, that it would be fraudulent to file an application to copyright something that was not your own design or created for you?
A. Of course.
Q. You are aware of that?
A. Of course.
Q. What was the situation in connection with the ring involved in this lawsuit? Was this based on another ring in gold or silver?
A. No.
Q. This was a completely new idea in your mind, is that correct?
A. Yes.
Q. So, just to summarize your testimony in this one point, Mr. Sorgman, this particular ring, the ring involved in this case, was not based on another ring, it was a completely original conception of yours. You have never seen another ring that looked anything like this ring?
A. As far as I know, I never saw a ring that looked like it. I have seen rings that look like all the rings that I have here. Going through life and being in the business, all the rings I have, anybody else can see something or anything else, I can't say precisely I have never seen a ring that looked like it, or close to any of these rings.
Q. But you weren't aware of any ring that embodied that virtually same design?
A. Not as far as I know. I just told them this is what I want to do.
Q. So the ring germinated in your head, it was your idea, this ring?
A. This ring, this particular ring germinated in my head, yes."
(Deposition November 26, 1974, Questions 74–80; 149, 150; 158–160.)

that it might determine whether or not the material being offered does or does not have that degree of originality required for a valid copyright. To do this, the Copyright Office must know what is in the public domain, otherwise, it cannot evaluate and decide, whether "the author, through his skill and effort, has contributed a distinguishable variation from the older works." *Donald v. Zack Meyer's T.V. Sales and Service, supra* at 1029.

■ As to the defendant's argument of inequitable conduct in the "Copyright Warning", note 1, *supra*, appearing one month after the present litigation commenced, he contends, and I so find, that the warning is false and misleading in that it implies that the statutory penalty is mandatory, whereas, it is discretionary with the court; neglects to mention the statutory limitations on such damages, 17 U.S.C. § 101; and falsely states, in mandatory language, that, "The infringer is also liable for court costs and attorney's fees", which, to the contrary, are within the court's discretion. 17 U.S.C. § 116. Such a misstatement standing alone, may not be sufficient to support a complaint of unclean hands. However, it may be considered in conjunction with the other allegations I have discussed.

■ The unexplained omission in the copyright application, coupled with the testimony set forth in the margin in note 2, *supra*, and the misleading "Copyright Warning", cause me to conclude that even if this copyright were otherwise valid I would have to hold it unenforceable because of unclean hands. I find it was such inequitable conduct as to constitute misuse of the copyright.

### Anti-Trust Counterclaim

The defendant contends that the plaintiff's conduct in procuring the copyright at issue was fraudulent and, therefore, violates the anti-trust laws. He analogizes the present controversy to fraudulently procured patents, citing *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corporation*, 147 U.S. P.Q. 404, 382 U.S. 172, 86 S.Ct. 347, 15

L.Ed.2d 247 (1965); *Mueller Brass Co. v. Reading Industries*, 176 U.S.P.Q. 361, 352 F.Supp. 1357 (E.D.Pa.1972); *Struthers Scientific & International Corporation et al. v. General Foods Corporation*, 172 U.S.P.Q. 426, 334 F.Supp. 1329 (D.Del. 1971); *Nimmer on Copyright* sec. 149.1.

■ There appear to be no prior authorities specifically concerning fraudulent procurement of a copyright registration. However, it appears to this court, the same rationale affixing liability for violation of Section 4 of the Clayton Act (15 U.S.C. § 15), and for violation of Section 2 of the Sherman Act (15 U.S.C. § 2), on the holder of a patent monopoly is applicable to copyright cases, if the necessary conditions are proven. *See also United Artists Associated, Inc. v. N. W.L. Corporation*, 132 U.S.P.Q. 248, 198 F.Supp. 953 (S.D.N.Y.1961); *Tempo Music, Inc. v. Myers*, 160 U.S.P.Q. 707, 407 F.2d 503 (4th Cir. 1969). I need not make any definitive ruling on this allegation, for the minimal proof required to surface such an issue is lacking. The teachings of *Mueller Brass Co. v. Reading Industries, supra* at 1371, 1372, are clear:

"First, there must be a knowing, wilful and intentional act of misrepresentation to the patent office (though silence with knowledge of relevant information concerning prior art or inventorship may constitute such an act).

Second, the misrepresentation must be material, that is, it must be shown that the patent would not have issued but for the misrepresentation.

Third, the misrepresentation must be such that the Patent Office relied on it, and this reliance must have been reasonable. *University of Illinois Foundation v. Blounder Tongue, Inc.*, 422 F.2d 769 (7th Cir., 1970), reversed on other grounds, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Where the patent office should have caught the untruth, fraud will not be found, though a court as a court of equity may refuse to enforce a patent so obtained. See *Corning Glass Works*

*v. Anchor Hocking Glass Corp.*, 253 F.Supp. 461 (D.Del.1966), rev'd on other grounds 374 F.2d 473 (3rd Cir., 1967).

Fourth, it must appear that the holder of the patent either practiced the fraud complained of or attempted to enforce the patent monopoly with knowledge of the fraud. *Walker Process*, supra, 382 U.S. at 179, 86 S.Ct. 347, [15 L.Ed.2d 247] (concurring opinion of Justice Harlan).

Fifth, one of the essential elements of a violation of Section 2 of the Sherman Act must be shown, to wit, monopolization, attempts to monopolize, or combinations or conspiracies to monopolize. Apropos of this in the present case, the fact that plaintiff brought an infringement action is sufficient to show an attempt to monopolize. The burden of persuasion as to these elements is, of course, on the defendant.

As to the standard of proof entailed by that burden of persuasion, the law of patents is fairly clear that, as to the first three conditions, those relating to the establishment of an actual fraud on the patent office, the burden of persuasion is proof by clear and convincing evidence, *United States v. American Bell Telephone Co.*, 167 U.S. 224, 17 S.Ct. 809, 42 L.Ed. 144 (1897), and that a mere preponderance of the evidence may not be the basis for a finding of fraud. See generally, Ram, Patent Fraud: A New Defense, 54 Journal of the Patent Office Society 364 (1972) and cases cited therein at Footnote 64."

■ The state of this record presents the omission in item 7, the "Copyright Warning", and the statements of David Sorgman, note 2, *supra*, as the total evidence to support the defendant's counterclaim. Though Mr. Sorgman's deposition strains credulity and taints him with bad faith and unclean hands, *see Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945), I cannot find that it and the void in item 7 together with the "Copyright Warning" constitute the "clear and convincing evidence", required to establish fraud in such cases.

■ The plaintiff's silence, in not completing item 7 is, of course, some evidence; but here there is no "clear and convincing" proof that Mr. Sorgman acted knowingly with a specific intent to conceal "Exhibit B". He did state in his deposition as to whether he previously saw "Exhibit B", "as far as I know, I never saw a ring that looked like it . . ." As the trier of facts, I find this hard to believe, but I cannot say I am so clearly convinced that fraud can be found. If a preponderance of proof were the touchstone, my finding might be otherwise. Furthermore, I would be loathe to find a monopolization, or attempt to monopolize, absent evidence as to the state of the market. We may be discussing an irrelevant and insignificant item that may have no meaningful market. *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corporation*, supra, 382 U.S. at 177, 86 S.Ct. at 350, 15 L.Ed.2d at 251. I find the evidence much too skeletal to give this issue, as raised by the defendant, any further consideration.

The defendant's counterclaim is denied.

The defendant will prepare an order reflecting the rulings herein.