KNICKERBOCKER TOY CO., INC.

v.

WINTERBROOK CORPORATION and
St. James Doll Creations

v.

ST. JAMES DOLL CREATIONS.

Civ. No. 81–521–D.

United States District Court,
D. New Hampshire.

Sept. 30, 1982.

Raymond V. Denault, Claremont, N.H., Robert Stoll, New York City, for plaintiff.

Steven M. Latici, Laconia, N.H., Milton Oliver, Boston, Mass., for Winterbrook.

Nancy Richards-Stower, Concord, N.H., John L. Peytavin, Lutcher, La., for St. James.

## ORDER AND OPINION

DEVINE, Chief Judge.

The manufacture and sale of a line of stuffed rag dolls gives rise to the instant copyright infringement action involving one of the world's largest toy companies and a non-profit community action agency. At stake is the copyright status of two of America's most beloved and well-known dolls, Raggedy Ann and Raggedy Andy. Subject matter jurisdiction is founded upon 28 U.S.C. §§ 1332, 1338, and 15 U.S.C. § 15.

Plaintiff Knickerbocker Toy Company, Inc. ("Knickerbocker"), a subsidiary of Warner Communications, is a Delaware corporation having its principal place of business in New Jersey. Knickerbocker Amended Complaint ¶ 3; St. James Exhibit X–1. Knickerbocker claims that its predecessor corporation, Knickerbocker Toy Company, Inc., a New York corporation, acquired in 1964 the exclusive license from the copyright owners to make and sell Raggedy Ann and Raggedy Andy stuffed rag dolls. Affidavit of Rod L. White, President of Knickerbocker, ¶¶ 1, 2 ("R. White Affidavit"); Affidavit of Richard Gruelle ¶ 5 ("Gruelle Affidavit"). Knickerbocker has since acquired its own copyright in the famous dolls, Copyright # Gp 55343. Amended Complaint, Exhibit 1. It is this copyright upon which Knickerbocker relied in filing this action.

Defendant St. James Doll Creations ("St. James") is the "trading style" of an employment project of St. James Parish Community Action, Inc., a non-profit Louisiana corporation. St. James' Answer and Counterclaim, filed February 1, 1982, ¶ 32 ("St. James' Answer"). At its height, St. James' doll manufacturing operation consisted of several former welfare recipients who worked on a regular basis and over 100 low-income and elderly families working in their homes. Affidavit of Larry LeBeouf, Acting Director, St. James Parish Community Action, Inc., attached to St. James' Motion to Respond Out of Time, filed January 5, 1982. St. James' stuffed rag dolls were sold to retailers through its sales representative. LeBoeuf Deposition, St. James' Exhibit Z–39, 42, 47, 62–63. Defendant Winterbrook Company ("Winterbrook"), a New Hampshire corporation, was one such retailer, allegedly shipping and selling St. James' stuffed rag dolls from its principal place of business in New Hampshire. Amended Complaint ¶ 4.

This action commenced on October 20, 1981, when Knickerbocker filed a complaint against Winterbrook alleging infringement of Copyright # Gp 55343. Winterbrook in turn filed a third-party complaint against St. James. Knickerbocker subsequently amended its complaint on December 22, 1981, to allege a first-party action against both Winterbrook and St. James. St. James answered the amended complaint on February 3, 1982, denying that Knickerbocker possessed a valid copyright and denying any copyright infringement. St. James further asserts that Knickerbocker engaged in fraudulent conduct before the Copyright Office, and counterclaims for violations of the federal antitrust laws. St. James also counterclaims under state common law causes of action. Based on the acts alleged in its counterclaims, St. James also seeks a declaratory judgment that the Knickerbocker copyright is null, void, and unenforceable.

Knickerbocker filed a motion for preliminary injunction against St. James on December 28, 1981, and a hearing was set for February 11, 1982. The motion was withdrawn on February 9, 1982, after a stipulated agreement was reached between Knickerbocker and Winterbrook. This controversy is now before the Court for the first time on the following motions:

—Knickerbocker's Motion to Amend Complaint;

—St. James' Motion to Strike Knickerbocker's Amended Reply to St. James' Counterclaims;

—St. James' Motion to Strike Knickerbocker's Letter to the Court dated June 17, 1982;

—St. James' Motion for Summary Judgment or Declaratory Judgment on the issues of copyright validity, copyright infringement, unclean hands, antitrust, tortious interference with contractual relations, and unfair competition;
—Knickerbocker's Motion to Dismiss Antitrust Claims; and
—Knickerbocker's Motion to Strike Affirmative Defense.

The Court has carefully reviewed over 100 pages of pre- and post-hearing briefs of counsel, the compendium of affidavits, depositions, documents under seal, and exhibits submitted, and the additional evidence and oral argument at the hearing on motion for summary judgment, and thus proceeds to its resolution of the pending motions.

### The Facts

The facts underlying the instant litigation are complex. Because a factual summary is pertinent to (and only to) the pending motions for summary judgment, the Court summarizes the record in the light most favorable to the nonmoving party (Knickerbocker). Rule 56, Fed.R.Civ.P.; *O'Neil v. Dell Publishing Company,* 630 F.2d 685, 686 (1st Cir.1980); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

The first Raggedy Ann doll was reportedly made in the early part of this century by the grandmother of John B. Gruelle ("Gruelle"), who later acquired fame and fortune as the author of "Raggedy Ann Stories" and "Raggedy Andy Stories". *Gruelle v. Molly-'Es Doll Outfitters, Inc.,* 94 F.2d 172 (3d Cir.1937), *cert. denied,* 304 U.S. 561, 58 S.Ct. 943, 82 L.Ed. 1528 (1938). Published in 1918 and 1920, respectively, the books were copyrighted by the Gruelles'

publisher, P.F. Volland & Company ("Volland"). Gruelle Affidavit ¶¶ 3, 4. Both copyrights were renewed by Gruelle's widow, Myrtle Gruelle, in 1945 and 1947, respectively. *Id.* Certified copies of the Gruelle copyrights and renewal copyrights have been submitted into evidence by Knickerbocker. Knickerbocker claims that these copyrights are still valid and subsisting and that they afford copyright protection to the Raggedy Ann and Raggedy Andy dolls in addition to Knickerbocker's own copyright.[1]

Raggedy Ann and Raggedy Andy dolls have been manufactured by several different companies since the early part of this century. Gruelle obtained a design patent on a Raggedy Ann doll in 1915, Design Patent No. 47,789. St. James Exhibit Q. A copy of the design patent is hereto attached as Appendix A. Volland itself manufactured a version of the Raggedy Ann and Raggedy Andy dolls in the early part of this century. Affidavit of Leo White, (former) President of Knickerbocker Toy Company, attached to Knickerbocker's Application for Registration of a Claim to Copyright dated June 22, 1967, Item 19 of the Certified Copies of the Files of the Copyright Office ("L. White Affidavit"). The parties have as yet been unable to locate one of the Volland dolls; they have introduced a photocopy of a 1935 advertisement bearing a picture of these dolls, a copy of which is hereto attached as Appendix B. *Id.;* St. James' Exhibit N-3.[2]

For a period of approximately 25 years dating from 1938 to 1963 the exclusive rights to the Raggedy Ann and Raggedy Andy dolls were held by Georgene Novelties, Inc. ("Georgene"). L. White Affidavit. The present record discloses that Georgene

---

1. For purposes of simplicity and clarity, the Court will refer to the "Gruelle copyright" and the "Knickerbocker copyright" throughout the course of the Opinion. The use of these terms does not constitute a determination of the validity of the copyrights in question.

2. According to the Court in *Gruelle v. Molly-'Es Doll Outfitters, Inc., supra,* Gruelle first manufactured the dolls himself, and subsequently entered into an agreement with Volland. Vol-

land ceased manufacturing the books and dolls during the Depression; Gruelle then acquired the copyrights obtained by Volland. The Court's summation of the facts also makes reference to one Exposition Doll & Toy Manufacturing Company, which reportedly was granted permission by Gruelle to manufacture Raggedy Ann and Raggedy Andy dolls in 1935. Evidence of these transactions does not appear in the present record, and the Court does not take them into its consideration at this time.

manufactured three versions of the dolls, hereinafter referred to as "Georgene 1" and "Georgene 2", *see* attachments to Affidavit of Pamela Ross ("Ross Affidavit"),[3] and "Georgene 3", *see* attachment to L. White Affidavit and St. James Exhibit S–1, photocopies of which are attached as Appendices C–1, C–2, and C–3, respectively. In some of the photographs and photocopies submitted, a copyright notice bearing the names of P.F. Volland Company, John B. Gruelle, and Myrtle Gruelle is visible. St. James Exhibit S–1; attachments to Ross Affidavit.

By agreement dated June 20, 1960, Myrtle Gruelle transferred to Bobbs-Merrill Company, Inc., rights to certain copyrights in Raggedy Ann and Raggedy Andy, reserving to herself "the right to make, copy, reproduce, use and sell the specific characters 'RAGGEDY ANN' and 'RAGGEDY ANDY' in the form of stuffed rag dolls". Gruelle Affidavit ¶ 2; certified records of the Copyright Office Vol. 1079, p. 78, ¶ 3. Effective January 1, 1964, Knickerbocker's predecessor was granted the exclusive United States rights to manufacture and sell Raggedy Ann and Raggedy Andy dolls.[4] Gruelle Affidavit ¶ 5; R. White Affidavit ¶ 2.

Thereafter Knickerbocker manufactured and sold its own version of the Raggedy Ann and Raggedy Andy dolls, first shown at the New York Trade Show on March 9, 1964, and first shipped to customers on May 11, 1964. L. White Affidavit. Knickerbocker then sought copyright protection for what it claimed to be a new version of the famous dolls. The following summary of the proceedings before the Copyright Office is drawn from the certified records thereof submitted by Knickerbocker, also found in uncertified form as St. James Exhibits C–P. For ease of reference the St. James identifications are herein utilized.

Knickerbocker submitted copyright applications for Raggedy Ann and Raggedy Andy dolls in April of 1964, giving as a first publication date the date of November 23, 1938. The Copyright Office rejected the application because the copies deposited bore copyright notices with the 1945–1963 copyright dates attached (in the name of Myrtle Gruelle), as well as Knickerbocker's copyright notice. The Copyright Office concluded that "dolls published in 1938 would not show a 1945 and 1963 copyright notice". St. James Exhibit E.

In February 1967 Knickerbocker filed a second set of copyright applications giving the date of first publication of the Raggedy Ann and Raggedy Andy dolls as May 11, 1964. The Copyright Office rejected this application, this time stating that the copies of the dolls submitted therewith were "substantially identical" to the copies deposited in 1964, and that the 1964 application stated that the dolls were first published in 1938. St. James Exhibit L. The Copyright Office concluded that because the copies proffered were substantially identical to the "earlier published copies", no registration was authorized. *Id.*

---

**3.** Knickerbocker has objected to the submission of the Ross Affidavit on the grounds of relevancy and competency. Knickerbocker's claim of lack of relevance is belied by the seven detailed pages of argument which follow. The existence of prior versions of the dolls is clearly relevant to the issues of originality, among others. *See infra.* Knickerbocker challenges the competency of the affidavit on the basis that the 29-year-old affiant could not properly testify to the receipt, care, and handling of dolls she was given as a young child. At this juncture, the Court considers this to be an argument more properly addressed to weight than to admissibility. Additionally, a color photograph of the Georgene (Ann) 2 doll (St. James Hearing Exhibit L) was admitted at hearing without objection from Knickerbocker. Accordingly,

Knickerbocker's objection is overruled, and the identification is stricken from the Ross Affidavit.

**4.** The agreement has not been submitted into the record. The Gruelle Affidavit refers to an agreement dated September 28, 1962. The R. White Affidavit refers to agreements made in 1962 and 1963. Knickerbocker asserts in its brief at p. 7 that the two agreements govern domestic and foreign rights. The assignment introduced at hearing bears a March 1, 1967 date. The assignment makes no reference to other agreements, but correspondence of counsel pertaining to the assignment makes reference to a prior assignment dated October 23, 1965. St. James Hearing Exhibit A2.

On June 22, 1967, a third and ultimately successful application was made. In an apparent attempt to clarify the nature of the application and the prior reference to the 1938 date, Knickerbocker attached to the application the Affidavit of Leo White, to which the Court has herein referred, and a cover letter from counsel. The cover letter and the affidavit stressed that the application was being made for a new and different version of the dolls, counsel's letter stating that "the shape of the nose, mouth and eyebrows [was] different". St. James Exhibit N–1. Question 7 of the June 1967 application, which specifically requests disclosure as to prior registrations or publications, was only partially completed, however.[5] Question 7 contains several requests for information.

> 7. *Previous Registration or Publication:* If a claim to copyright in any substantial part of this work was previously registered in the U.S. Copyright Office in unpublished form, or if a substantial part of the work was previously published anywhere, give requested information.
> Was work previously registered? Yes __ No __ Date of registration _____ Registration number _____ Was work previously published? Yes __ No __ Date of publication _____ Registration number _____ Is there any substantial NEW MATTER in this version? Yes __ No __ If your answer is 'Yes,' give a brief general statement of the nature of the NEW MATTER in this version. (New matter may consist of compilation, abridgment, editorial revision, and the like, as well as additional artistic or graphic material.)

Knickerbocker did not check any of the "Yes" or "No" boxes, but did respond to the request for the nature of new matter, stating, "new and additional artistic material, including new facial features and expression".

The L. White Affidavit appended to the application included reference to and a photocopy of a prior Volland and a prior Georgene (Georgene 3) version of the dolls. The L. White Affidavit did not refer to the Georgene 1 or Georgene 2 dolls, the Gruelle design patent, or the Gruelle copyrights, although counsel apparently did refer to the copyrights on the Gruelle books in his conversations with Copyright Office personnel. St. James Exhibit P. The copies of the dolls as submitted with the 1964 application also included a copyright notice in the names of John B. Gruelle and Myrtle Gruelle, St. James Exhibit E, and counsel apparently did refer to these copyrights in discussing the dolls with Copyright Office personnel. St. James Exhibits G, H.

The Knickerbocker Raggedy Ann was accepted for registration, Copyright # Gp 55343, "on the basis of (Knickerbocker's) statement of new matter". St. James Exhibit O. No separate registration was granted for Raggedy Andy because "all of the copyrightable elements of the latter work are embodied in RAGGEDY ANN which was published the same day". *Id.* A photocopy of photographs of the Knickerbocker Raggedy Ann and Raggedy Andy are hereto attached as Appendices D–1 and D–2.

Knickerbocker became aware of the allegedly infringing St. James dolls in the fall of 1981. A photocopy of a photograph of the St. James "Ma Shag" doll is hereto attached as Appendix E. On November 17, 1981, Richard Gruelle, heir to John Gruelle, wrote Knickerbocker attorneys to inform them that he had seen what he believed to be "poorly made copies" of Raggedy Ann and Raggedy Andy dolls with the St. James label at Ivey's Department Store in Asheville, North Carolina. Gruelle Affidavit ¶ 6. Eventually letters were sent to several retailers, including Ivey's, Sutton Place Sales, Ltd., of New York City, Garfinckel's of Washington, D.C., and defendant Winterbrook informing them of the Knickerbocker copyright and demanding that the addressee cease selling the alleged infringing dolls. St. James Exhibits W–1, W–2, W–3, and W–4; R. White Affidavit ¶ 6. This litigation commenced when defendant Winterbrook did not accede to the terms of the demand letter. *Id.*

---

5. The February 1967 application was filled out in the same manner as the June 1967 application. A slightly different form was employed in 1964.

*Motion to Amend and Related Motions*

At hearing on the motion for summary judgment, Knickerbocker moved to amend its complaint to allege infringement of the Gruelle copyrights, expressing the view that these copyrights confer copyright protection on the Knickerbocker Raggedy Ann and Raggedy Andy dolls as well. Leave to amend pleadings "shall be freely given when justice so requires". Rule 15(a), Fed. R.Civ.P.; *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Accordingly, Knickerbocker's motion to amend was granted at hearing, and defendants' objection thereto was noted.

Question was subsequently raised at hearing concerning Knickerbocker's reliance on its status as exclusive licensee [6] of the Gruelles to assert both its and the Gruelles' claims. The parties have submitted into evidence a copy of the assignment of rights, Plaintiff's Hearing Exhibit 1, and correspondence of various attorneys related thereto, Defendants' Hearing Exhibits A1–A3 and B. *See* 17 U.S.C. § 205(d).[7] St. James briefly argued at hearing that the letters demonstrated the fraud or invalidity of the assignment and therefore negated Knickerbocker's rights as exclusive licensee. However, it is difficult to discern from St. James' post-hearing submissions whether it in fact continues to urge the invalidity of the assignment. Accordingly, the Court now reaffirms its decision to grant the motion to amend without addressing the issue of the validity of the assignment at this time.

Leave to amend is also extended to Knickerbocker's trademark claims, previously pled in reply to St. James' counterclaims and now the subject of St. James' Motion to Strike Knickerbocker's Amended Reply to Third-Party Defendant's Counterclaims, which is now moot.[8]

*Copyright Claims*

St. James moves for summary judgment against Knickerbocker on the ground that the Knickerbocker Copyright # Gp 55343 is invalid or, in the alternative, that it encompasses no copyrightable matter that defendant's dolls could be said to infringe.

■ Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law". Rule 56(c), Fed.R.Civ.P.; *Condon v. Local 2944, United Steelworkers of America,* 683 F.2d 590, 594 (1st Cir.1982). A dispute of fact is material if it "affects the outcome of the litigation" and is genuine if manifested by "substantial" evidence "going beyond the allegations of the complaint". *Pignons S.A. de Mecanique v. Polaroid Corporation,* 657 F.2d 482, 486 (1st Cir.1981), *quoting Hahn v. Sargent, supra,* at 464. In filing its motion, St. James "assumed the burden of demonstrating there was no genuine issue of material fact". *White v. Hearst Corporation,* 669 F.2d 14, 17 (1982), *quoting Over the Road Drivers, Inc. v. Transport Insurance Company,* 637 F.2d 816, 819, n. 4 (1st Cir.1980); *see also Mack v. Cape Elizabeth School Board,* 553 F.2d 720, 722 (1st Cir.1977). In reviewing the record, the evidence must be viewed and all reasonable inferences must be drawn in the manner most favorable to the nonmoving party. *Pignons S.A. de Mecanique v. Polaroid Corporation, supra.*

"To prevail on a claim of copyright infringement, a plaintiff 'must show ownership of a valid copyright and copying by the defendant.'" *Knickerbocker Toy Company v. Azrak-Hamway International, Inc.,* 668

---

**6.** For a discussion of the standing of an exclusive licensee *to bring an infringement action, see* 3 Nimmer on Copyright § 12.02 (1981) ("Nimmer").

**7.** Knickerbocker initially objected to the introduction of Exhibit B, but withdrew its objection by letter to the Court dated June 17, 1982. St. James' Motion to Strike Knickerbocker's June 17 submission is denied, and the identification

is stricken from Exhibit B. However, the Court considers the filing of a personalized letter to the Court rather than a motion and accompanying memorandum to be improper. In the future, such filings will not be accepted in this case.

**8.** For the early history of the Raggedy Ann and Raggedy Andy trademarks, *see Gruelle v. Molly-'Es Doll Outfitters, Inc., supra.*

F.2d 699, 702 (2d Cir.1982), *quoting Novelty Textile Mills, Inc. v. Joan Fabrics Corporation,* 558 F.2d 1090, 1092 (2d Cir.1977); 3 Nimmer § 13.01 at 13–3 (1981). St. James' initial challenge to the validity of the Knickerbocker copyright rests on two grounds: (1) fraud or unclean hands, and (2) lack of originality.

■ St. James' claim of fraud or unclean hands is based on Knickerbocker's failure to fully complete Item 7 of the Copyright Application. By failing to complete Item 7, St. James argues, Knickerbocker deliberately withheld information from the Copyright Office concerning prior versions of the Raggedy Ann and Raggedy Andy dolls, knowledge of which might have caused the Copyright Office to reject Knickerbocker's application for lack of new or original matter. Knowing failure to advise the Copyright Office of prior published works may result in invalidation of a copyright. *Russ Berrie & Company v. Jerry Elsner Co., Inc.,* 482 F.Supp. 980 (S.D.N.Y.1980); *Vogue Ring Creations v. Hardman,* 410 F.Supp. 609 (D.R.I.1976). However, this is not a case of complete nondisclosure. *Cf. Russ Berrie & Company v. Jerry Elsner Co., Inc., supra; Vogue Ring Creations, Inc. v. Hardman, supra.* Some of the prior versions of the dolls were disclosed to the Copyright Office, as was the existence of the copyrighted Raggedy Ann and Raggedy Andy books. Knickerbocker has submitted the affidavit of Arthur J. Levine, former head of the Arts Section, Examining Division, of the Copyright Office and Assistant Chief of the Examining Division, who states therein "that far greater disclosure was made prior to the issuing of [the Knickerbocker] Registration than there is in 95% of the applications which are submitted to the Copyright Office". Whether or not Knickerbocker engaged in misleading or fraudulent conduct before the Copyright Office thus turns on disputed questions of material fact as to the nature and extent of Knickerbocker's nondisclosure.

■ St. James relies heavily on the existence of the Georgene 2 Raggedy Ann doll in arguing to this Court that Knickerbocker's conduct before the Copyright Office was fraudulent. As is discussed more fully *infra,* the Georgene 2 and Knickerbocker Raggedy Ann dolls appear to be identical in all relevant particulars. Furthermore, the Levine affidavit was prepared prior to the time the Georgene 2 doll was submitted into the record, and Levine's assertions regarding Knickerbocker's disclosure do not take the existence of Georgene 2 into account. However, the Court has virtually nothing before it at this juncture bearing on Knickerbocker's knowledge of the existence of the Georgene 2 doll. *Cf. Russ Berrie & Company v. Jerry Elsner Co., Inc., supra* (summary judgment granted where copyright applicant conceded both knowledge of the preexisting work and that it was in the public domain at the time the application was filed). The record is simply barren of evidence relating to what information was requested by or provided to Knickerbocker by the Gruelles or Georgene Novelties, Inc., at the time Knickerbocker acquired its license and sought copyright registration. The existence of the Georgene 2 doll does not alone foreclose all factual dispute on the issue of fraud, and the motion for summary judgment must therefore be denied.

St. James also challenges the validity of the Knickerbocker copyright on the ground of lack of originality. Rooted in article I, section 8, of the Constitution, and made explicit in the 1976 Copyright Act,[9] the originality requirement is "the one pervading element prerequisite to copyright protection *regardless of the form of the work*". 1 Nimmer § 2.01 at 2–5. " 'Original' in reference to a copyrighted work means that

---

9. 17 U.S.C. § 102. The parties appear to agree that the 1976 rather than the 1909 Copyright Act governs this dispute, as the purported infringing acts are alleged to have occurred after January 1, 1978, the effective date of the 1976 Act. *See Durham Industries, Inc. v. Tomy Corporation,* 630 F.2d 905, 909–10, n. 7 (2d Cir. 1980) *("Durham"); cf. Burke v. National*

*Broadcasting Company, Inc.,* 598 F.2d 688, 691, n. 2 (1st Cir.), *cert. denied,* 444 U.S. 869, 100 S.Ct. 144, 62 L.Ed.2d 93 (1979). In any event, we need not decide which Act applies, as the standard of originality is the same under either Act. *Durham, supra* at 909–10, n. 7; 1 Nimmer § 2.01 at 2–6.

the particular work 'owes its origin' to the 'author'." *Alfred Bell & Co. v. Catalda Fine Arts,* 191 F.2d 99, 102 (2d Cir.1951), *quoting Burrow-Giles Lithographic Co. v. Sarony,* 111 U.S. 53, 57–58, 4 S.Ct. 279, 280–81, 28 L.Ed. 349 (1884) (*"Alfred Bell"*). "The test of originality is concededly one with a low threshold." *L. Batlin & Son, Inc. v. Snyder,* 536 F.2d 486 (2d Cir.) (en banc), *cert. denied,* 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976).

> All that is needed to satisfy both the Constitution and the statute is that the 'author' contributed something more than a 'merely trivial' variation, something recognizably 'his own.' Originality in this context 'means little more than a prohibition of actual copying.' No matter how poor artistically the 'author's' addition, it is enough if it be his own. *Bleistein v. Donaldson Lithographing Co.,* 188 U.S. 239, 250, 23 S.Ct. 298 [300] 47 L.Ed. 460 [1902].

*Alfred Bell, supra* at 102–03 (footnotes omitted); *see also Durham, supra,* 630 F.2d at 909–10; *O.W. Donald v. Zack Meyer's T.V. Sales and Service,* 426 F.2d 1027, 1029 (5th Cir.1970), *cert. denied,* 400 U.S. 992, 91 S.Ct. 459, 27 L.Ed.2d 441 (1971); *Gelles-Widmer Co. v. Milton Bradley Co.,* 313 F.2d 143, 146 (7th Cir.), *cert. denied,* 373 U.S. 913, 83 S.Ct. 1303, 10 L.Ed.2d 414 (1963). "Originality is, however, distinguished from novelty; there must be independent creation, but it need not be invention in the sense of striking uniqueness, ingeniousness, or novelty, since the Constitution differentiates 'authors' and their 'writings' from 'inventors' and their 'discoveries.'" *L. Batlin & Son, Inc. v. Snyder, supra* at 490 (citations omitted). Thus copyright (as opposed to patent) protection may, under certain circumstances, extend to two works similar or even identical in expression. *Alfred Bell, supra* at 103.

> Originality means only that the work . . . is independently created, and not copied from other works. Therefore a work is original and may command copyright protection even if it is completely identical with a prior work provided it was not copied from such prior work but is rather a product of the independent efforts of its author.

1 Nimmer § 2.01(A), p. 2–8 (footnotes omitted); *see Sheldon v. Metro-Goldwyn Pictures Corp.,* 81 F.2d 49, 54 (2d Cir.1936), *aff'd* 309 U.S. 390, 60 S.Ct. 681, 84 L.Ed. 825 (1940); *Novelty Textile Mills, Inc. v. Joan Fabrics Corp., supra* at 1093, n. 3; *O.W. Donald v. UARCO Business Forms,* 478 F.2d 764, 765 (8th Cir.1973); *Knickerbocker Toy Co., Inc. v. Etone International, Inc.,* 211 U.S.P.Q. 414, Copyright L.Rep. (CCH) ¶ 25,344 (D.N.J.1980); *Professional System & Supplies Co., Inc. v. Databank Supplies & Equipment Co., Inc.,* 202 U.S.P.Q. 693; Copyright L.Rep. (CCH) ¶ 25,081 (W.D.Okla. 1979); *Dollcraft Industries, Ltd. v. Well-Made Toy Manufacturing Company,* 479 F.Supp. 1105, 1115 (E.D.N.Y.1978).

■ The fact that Knickerbocker's Raggedy Ann and Raggedy Andy dolls are based on prior works does not *a fortiori* compel the conclusion that the dolls are not original. Works substantially derived from prior works, whether the preexisting works are copyrighted [10] or in the public domain,[11] are also subject to copyright protection so long as the derivative work itself is original. 17 U.S.C. §§ 101, 103(b).[12] The original aspects of the derivative work must themselves be nontrivial, and the copyright in

---

**10.** Where the underlying work is copyrighted, the derivative work is "saved from being an infringing work only because the borrowed or copied material was taken with the consent of the copyright owner". 1 Nimmer § 3.01 at 3–3.

**11.** St. James admits for purposes of these motions that there are material facts in dispute concerning the copyright status of the pre-Knickerbocker dolls.

**12.** 17 U.S.C. § 103(b) provides:

> The copyright in a compilation or derivative work extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material. The copyright in such work is independent of, and does not affect or enlarge the scope, duration, ownership, or subsistence of, any copyright protection in the preexisting material.

the derivative work does not affect the copyright protection in the underlying work. *Durham, supra* at 909; *cf. Filmvideo Releasing Corporation v. Hastings,* 668 F.2d 91 (2d Cir.1981); *Russell v. Price,* 612 F.2d 1123 (9th Cir.1979), *cert. denied sub nom. Drebin v. Russell,* 446 U.S. 952, 100 S.Ct. 2919, 64 L.Ed.2d 809 (1980); *Classic Film Museum, Inc. v. Warner Bros., Inc.,* 597 F.2d 13 (1st Cir.1979). "Thus, the only aspects of [Knickerbocker's dolls] entitled to copyright protection are the non-trivial, original features, if any, contributed by the author or creator of these derivative works." *Durham, supra* at 909. With the foregoing principles in mind, the Court considers the arguments presented.

St. James argues that the Knickerbocker Raggedy Ann and Raggedy Andy contain only trivial variations over the prior Gruelle (Appendix A), Volland (Appendix B), and Georgene (Appendix C–1 to C–3) versions and that St. James is therefore entitled to summary judgment as a matter of law. Summary judgment may be granted only if no reasonable trier of fact could find the Knickerbocker dolls original. In comparing the various dolls, the works themselves supersede the representations of the parties. *Cf. Decorative Aids Corp. v. Staple Sewing Aides,* 497 F.Supp. 154 (S.D.N.Y.1980), *aff'd without published opinion,* 657 F.2d 262 (2d Cir.1981).

■■■■ As to the Georgene 2 Raggedy Ann, St. James' argument would appear to have great merit. Although a timely obtained certificate of copyright registration [13] creates a presumption of copyright validity, that presumption is not irrebuttable. *Durham, supra* at 908. This is particularly true where, as here, the Copyright Office did not have the opportunity to pass upon the question of originality in relation to a prior work because that work was not presented to that Office. *Russ Berrie & Company v. Jerry Elsner Co., Inc., supra* at 988. Nontrivial differences between the

Knickerbocker and Georgene 2 Raggedy Ann dolls are indeed difficult, if not impossible, to discern. Both have black eyes bordered by white circles; both have curved eyebrows and triangular bottom lashes; both have curved, smiling mouths with an oval at the middle and short, vertical lines at each end of the mouth. Both dolls have a triangular nose, the only difference being that the nose on the Knickerbocker doll appears slightly larger and more angular and that the two red dots on either side of the nose are slightly closer to the nose in the Knickerbocker version. As noted above, however, there is currently no evidence in the record concerning Knickerbocker's knowledge of the Georgene 2 (or Georgene 1) doll. Although such knowledge might be inferred by a trier of fact from proof of access, summary judgment on the question of originality must be denied if there is a material question of fact as to the issue of independent creation. At present the L. White Affidavit, which refers only to the Volland and Georgene 3 dolls, creates a question of material fact as to what "material was previously known" to Knickerbocker. *Original Appalachian Artworks v. Toy Loft,* 489 F.Supp. 174, 179 (N.D.Ga.1980), *quoting Puddu v. Buonamici Statuary, Inc.,* 450 F.2d 401, 402 (2d Cir.1971); *cf. O.W. Donald v. Zack Meyer's T.V. Sales and Service, supra* (striking similarity between business forms compels conclusion that those drafted by nonlawyer were either consciously or unconsciously copied from prior works and were not independently created). For this reason, summary judgment may not be granted on the basis of the Georgene 2 (or Georgene 1) doll at this time.

The remaining dolls present different questions of law and fact entirely. The Volland and Georgene 3 dolls [14] were made known to the Copyright Office; Knickerbocker's knowledge of their existence at the

---

13. The registration here was obtained within five years of the date of first publication as stated in the application. *See* 17 U.S.C. § 401(c); *Novelty Textile Mills, Inc. v. Joan Fabrics Corp., supra* at 1092 (timeliness under the 1909 Act).

14. There is nothing in the documents submitted to the Copyright Office regarding the Gruelle design patent.

time it designed its own dolls is undisputed. The issue as to these dolls is whether the Knickerbocker Raggedy Ann or Raggedy Andy contains a substantial, nontrivial variation over the prior works.

St. James, both in its brief and at oral argument, has with painstaking detail noted the similarities between the Knickerbocker Raggedy Ann and Raggedy Andy and the prior Volland and Georgene 3 dolls. As perusal of the attached appendices demonstrates, there are indeed many similarities between the works. Both the Volland and the Knickerbocker dolls have upturned, smiling faces. The Georgene 3 and Knickerbocker versions have similar black eyes, rimmed with white circles, with curved eyebrows and triangular lashes. There are differences between the dolls, however. The shape of the head of the Volland doll is different, and although it is difficult to discern due to the poor nature of the photocopy, the shape and configuration of the Volland doll's features appear to differ in overall look and appeal from the Knickerbocker version. The Georgene 3 Raggedy Ann and Raggedy Andy's mouth is downturned, as if in a frown, if not a grimace, while the Knickerbocker dolls smile.

Because the copyright at issue here is a derivative one, the existence of some similarities between the works is not dispositive of the originality question. As to any comparison between the dolls, the issue is whether the variations between the dolls are nontrivial. The Court is presented then with a "nice question of originality", *Dezendorf v. Twentieth Century Fox Film Corporation,* 99 F.2d 850, 851 (9th Cir.1938)—a question which has been characterized as one of fact, not law, *Bleistein v. Donaldson Lithographing Company, supra.*

Here the Court is asked to find that the facial expression of the Knickerbocker dolls carries no new copyrightable "expression" in the statutory sense. Although we think it a slim reed upon which to rest the validity of the Knickerbocker derivative copyright, based on a comparison of the dolls only, the differences between the dolls are such that, on the basis of the present record, the Court cannot conclude that no rational trier of fact could find a nontrivial

variation between the dolls. Each doll is indeed a Raggedy Ann or Raggedy Andy, but there is some evidence here from which a jury could find that the Knickerbocker doll has an aesthetic appeal which is original as compared to the Volland or Georgene 3 dolls. In such circumstances, it is not for this Court to substitute its taste for that of the public. *Bleistein v. Donaldson Lithographing Company, supra.*

It is important to note that the foregoing analysis is based solely on a comparison of the facial characteristics of the dolls themselves. While this may seem an obvious point, especially to the parties who voluminously briefed and argued the originality question on this basis, the narrowness of the issue here presented deserves some attention at this juncture. Focusing on the facial features of the dolls alone overlooks the obvious fact that each of the Volland, Georgene, and Knickerbocker dolls is admittedly a Raggedy Ann or Raggedy Andy doll. Two critical factors relevant to the question of originality are thus likewise overlooked. The first is the extent to which the underlying works, Raggedy Ann and Raggedy Andy, may be considered "characters", rather than mere "visages". *See Walt Disney Productions v. Air Pirates,* 581 F.2d 751, 754–57 & n. 14 (9th Cir.1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979). The second and potentially related factor is the existence of the Gruelle Raggedy Ann and Raggedy Andy books—books which Knickerbocker claims give copyright protection to both the Raggedy Ann and Raggedy Andy characters and all versions of the Raggedy Ann and Raggedy Andy dolls. To what extent the pictorial representations and descriptions contained in those books afford copyright protection to the Volland, Georgene, or Knickerbocker dolls, or conversely throws them into the public domain, is a matter to be addressed at a later stage of this litigation after the pleadings herein are amended. Without some better understanding of what is encompassed by the underlying work, which may include not only the dolls but the books as well, there remains a material question of fact as to the scope of the

**1320**

derivative copyright.[15] Whether any Raggedy Ann or Raggedy Andy doll, much less the *Knickerbocker* Raggedy Ann or Raggedy Andy, can be said to be an original derivative work is a question which is more properly addressed once the books and other related matters are in the record.[16]

St. James argues in the alternative that, assuming the validity of the Knickerbocker derivative copyright, its Ma and Pa Shag dolls cannot be said to infringe any copyrightable matter contained therein. Because there are numerous facts in dispute as to the scope, if any, of Knickerbocker's derivative copyright, the summary judgment on the issue of any "substantial similarity", *O'Neil v. Dell Publishing Co., Inc.*, 630 F.2d 685, 687 (1st Cir.1980), between the works must also be denied. St. James further argues that because it copied the McCall's Bobbs-Merrill pattern, and not the Knickerbocker doll, its motion for summary judgment for lack of copyright infringement must be granted. Because there exists a material question of fact as to whether St. James used the McCall's Bobbs-Mer-

rill pattern as a means of copying Knickerbocker's dolls, the motion is denied.

For the above reasons, St. James' motion for declaratory judgment on the issue of copyright validity is likewise denied.

### Antitrust Counterclaim

St. James counterclaims alleging violation of the Sherman Act, 15 U.S.C. § 2.[17] As counterclaim plaintiff, St. James alleges that Knickerbocker's fraudulent procurement of an invalid copyright and its bad faith enforcement of same, resulting in the loss of St. James' sales and distribution network, constitutes an illegal exercise of monopoly power in violation of § 2. Knickerbocker has moved to dismiss for failure to state a claim. St. James has objected to Knickerbocker's motion, and moves for summary judgment. For reasons which shall become apparent *infra*, the Court treats the motion as a motion to dismiss, and accordingly does not consider matters outside the pleadings.[18]

■ A motion to dismiss will not be granted unless "it appears beyond doubt

---

**15.** This very dilemma was aptly posed by one of Knickerbocker's counsel in a 1977 letter concerning copyright notices to be placed on the Knickerbocker Raggedy Ann and Raggedy Andy dolls.

> If it is your position that this Raggedy Ann doll is covered by a prior Johnny Gruelle copyright, how do you (and how would the public) identify that particular copyright? And if you (and the public) should succeed in identifying it (I do not see how this can be done) you would succeed only in starting the running of the copyright term from the effective publication date of that particular Johnny Gruelle copyright.

St. James Exhibit P–1. As the latter passage suggests, the value of the claimed derivative copyright lies in the extended life such a copyright could give the derivative portions of the work.

**16.** At present this case is to be distinguished from *Durham, supra,* where the Second Circuit affirmed the District Court's granting of summary judgment on the ground that certain Mickey Mouse and other Disney character wind-up toys lacked originality as a matter of law. Relying on the "mute testimony of Mickey, Donald, and Pluto themselves", the Court ruled as a matter of law that the characters were "instantly recognizable", and that the derivative wind-up toys contained only mechanical, non-

copyrightable variations over the prior works. *Id.* at 909. Although the Court did not have the validity of the Disney copyrights before it, it assumed that the Disney *characters* were copyrighted. Because, unlike *Durham,* the scope and validity of both the underlying and derivative copyrights may be litigated in this court, and because the present record discloses that several versions of the famous dolls have already been manufactured, the Court declines to judicially notice the "recognition factor" of the Raggedy Ann or Raggedy Andy characters, preferring instead to have the parties submit their proofs in due course. The Court therefore reserves the question of the applicability of *Durham* at this time.

**17.** The prohibitions of § 2 of the Sherman Act extend to: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of [interstate or foreign] trade or commerce . . . ."

**18.** "It is left to the discretion of the trial court whether or not to receive matters outside the pleadings on motion to dismiss for failure to state a claim." 2A Moore's Federal Practice ¶ 12.09, p. 2300 (1982) (and cases therein cited).

that plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief". *McLain v. Real Estate Board of New Orleans, Inc.*, 444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980) (*"McLain"*), *quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). This doctrine is no less vital in the field of antitrust litigation. *McLain, supra; Corey v. Look,* 641 F.2d 32, 38 (1st Cir.1981), *citing Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.,* 627 F.2d 919, 924 (9th Cir.1980), *cert. denied,* 450 U.S. 921, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981). However, the First Circuit has made it plain that vague pleadings lacking the requisite factual allegations of an antitrust claim will not suffice. *Gilbuilt Homes, Inc. v. Continental Homes of New England, A Division of Wylain, Inc.,* 667 F.2d 209 (1st Cir.1981) (*"Gilbuilt"*); *Americana Industries v. Wometco de Puerto Rico, Inc.,* 556 F.2d 625 (1st Cir. 1977).

■ Fraudulent procurement of a copyright by means of knowing and willful misrepresentations to the Copyright Office may strip a copyright holder of its exemption from the antitrust laws. *Vogue Ring Creations v. Hardman, supra. Cf. Walker Process Equipment, Inc. v. Food Machinery & Chemical Corporation,* 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965) (*"Walker Process"*).[19] An allegation of fraudulent procurement alone is not sufficient to establish a § 2 violation, however; other elements of the monopolization or attempted monopolization claim must be present. *Walker Process, supra* 382 U.S. at 177, 86 S.Ct. at 350; *see generally Gilbuilt, supra* at 211.[20]

Knickerbocker challenges the sufficiency of St. James' allegations regarding intent and the relevant market. Knickerbocker's assertion that St. James has failed to sufficiently plead "specific intent" to monopolize, an allegation necessary to state an attempted monopolization claim,[21] is clearly without merit. St. James has alleged that Knickerbocker knowingly, willfully, and intentionally withheld material information from the Copyright Office in order to obtain what St. James claims to be an invalid copyright, that Knickerbocker threatened St. James' retailers with legal action on the basis of this copyright to the detriment of St. James' business, and that it did so with the "specific intent to put St. James out of business and to create or perpetuate Knickerbocker's monopoly in the market of stuffed rag dolls in the United States". St. James Counterclaim ¶¶ 41–42. Knickerbocker correctly asserts that the good faith attempt to assert to protect a copyright interest, even if successful, is a complete defense to an action. *See Walker Process, supra; Alberto Culver Co. v. Andrea Dumon, Inc.,* 466 F.2d 705, 711 (7th Cir.1972); *Classic Film Museum, Inc. v. Warner Brothers, Inc.,* 523 F.Supp. 1230, 1234 (D.Me. 1981); *Vogue Ring Creations v. Hardman, supra.* However, it is clear from the face of these pleadings that counterclaimant has alleged sufficient facts which, if proved, would establish a fraudulent, bad faith, or predatory assertion and enforcement of a copyright interest for purposes of injuring competition rather than advancing legitimate business interests.

■ Of greater concern to the Court is Knickerbocker's challenge to the sufficiency

19. *Walker Process* concerns the antitrust consequences of the fraudulent procurement of a patent. The Court considers the holding of *Walker Process* fully applicable to this copyright case. As the Supreme Court has previously noted in the antitrust context, "[c]ertainly the rights of the copyright owner are no greater than those of the patentee". *United States v. Paramount Pictures, Inc.,* 334 U.S. 131, 143, 68 S.Ct. 915, 922, 92 L.Ed. 1260 (1948). The copyright laws "confer no rights on copyright owners . . . to violate the antitrust laws . . . ." *Broadcast Music, Inc. v. Columbia*

*Broadcasting System, Inc.,* 441 U.S. 1, 19, 99 S.Ct. 1551, 1562, 60 L.Ed.2d 1 (1979).

20. A review of St. James' pleadings and memorandum in support of its motion for summary judgment discloses that it seeks to allege both a monopolization and attempted monopolization claim.

21. *See Home Placement Service, Inc. v. The Providence Journal Co.,* 682 F.2d 274, 281 (1st Cir.1982). No specific intent to monopolize need be shown where actual monopoly power is proven. *Id.*

of St. James' allegations regarding monopoly power in a relevant product market.

To establish monopolization or attempt to monopolize a part of trade or commerce under § 2 of the Sherman Act, it would . . . be necessary to appraise the exclusionary power of the [defendant's conduct] in terms of the relevant market for the product involved. Without a definition of that market there is no way to measure [defendant's] ability to lessen or destroy competition.

*Walker Process, supra* 382 U.S. at 177, 86 S.Ct. at 350. Accordingly, the party seeking to assert a § 2 claim must provide "the relevant details of a § 2 claim" including "facts defining the market" sufficient to show the existence or dangerous probability of monopoly power therein. *Gilbuilt, supra* at 211. In *Walker Process* plaintiff Walker "failed to allege the relevant market [and] the dominance of the patented device therein . . .", and the Supreme Court remanded to permit Walker to replead same.

█ St. James' counterclaim as presently pled suffers from defects similar to those found in *Walker Process*—the counterclaim fails to allege any nexus between Knickerbocker's alleged illegal enforcement of copyright and the existence or dangerous probability of successful monopolization in a relevant market. St. James alleges that Knickerbocker is the "principal and largest manufacturer of stuffed rag dolls in the United States". St. James Counterclaim ¶¶ 35, 41. It further alleges that Knickerbocker has sought to enforce its copyright on certain rag dolls in order to perpetuate or create monopoly status in the stuffed rag doll market. The key link—the exclusionary power of the Knickerbocker copyright—is not alleged.[22] Although the problem may be semantic, the complaint does not state whether the product market alleged encompasses all rag dolls of any kind or description, or Raggedy Ann-type dolls, or something in between.[23] Absent some further factual allegations defining or clarifying the market, and the actual or probable dominance of the allegedly copyrighted item in dispute in that market, the counterclaim fails to state a claim as to both the monopolization and the attempted monopolization claims. *See Christen, Inc. v. BNS Industries, Inc.,* 517 F.Supp. 521, 524–26 (S.D.N.Y.1981) (patent); *Car-Freshner Corporation v. Auto Aid Manufacturing Corporation,* 438 F.Supp. 82, 86–88 (N.D.N.Y.1977) (trademark); *see generally Gilbuilt, supra; C.R. Bard, Inc. v. Medical Electronics Corporation,* 529 F.Supp. 1382, 1389–91 (D.Mass.1982); *Unibrand Tire & Product Co. v. Armstrong Rubber Company,* 429 F.Supp. 470, 477 (W.D.N.Y.1977); *Keco Industries v. Borg-Warner Corporation,* 334 F.Supp. 1240, 1245–46 (M.D.Pa.1971).

Accordingly, St. James' counterclaim for violation of § 2 of the Sherman Act is dismissed without prejudice, with leave to amend at such time as responsive pleadings to Knickerbocker's second amended complaint are filed, and St. James' motion for summary judgment is denied. Knickerbocker's argument that St. James' antitrust counterclaim be summarily dismissed for failure to offer evidence, presented and argued at pp. 46–53 of Knickerbocker's brief, is without merit. Mere technical defects in pleadings do not warrant summary dismissal, particularly in the field of antitrust litigation, *see McLain, supra; Corey v. Look, supra* at 38, n. 10, and particularly *where,* as here, the moving party has itself benefitted from the liberality with which motions to amend are granted.

### State Law Counterclaims

St. James counterclaims for intentional interference with contractual relations and unfair competition, asserting that these state law claims are governed by New Hampshire law.[24]

---

**22.** Some greater level of detail is spelled out in St. James' brief at p. 7.

**23.** The factors relevant to a determination of product market are set forth in *Home Placement Service, Inc. v. The Providence Journal Company, supra; George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.,* 508 F.2d 547 (1st Cir.1974), *cert. denied,* 421 U.S. 1004, 95 S.Ct. 2407, 44 L.Ed.2d 673 (1975). As these cases make clear, the ultimate determination of the relevant market is a matter of proof, not pleading.

**24.** Knickerbocker's Memorandum in Opposition also argues the motion on the basis of New

St. James alleges that Knickerbocker's letters to various retailers informing them that St. James' dolls infringed Knickerbocker's copyright in its dolls constitutes intentional interference with contractual relations. The essence of St. James' claim is that Knickerbocker knew or should have known that its copyright did not grant it the legal rights asserted and that Knickerbocker's conduct therefore was not privileged.

> One who intentionally and improperly interferes with the performance of a contract ... between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

*Hangar One, Inc. v. Davis Associates, Inc.,* 121 N.H. 586, 589, 431 A.2d 792, 794 (1981), *quoting* Restatement (Second) of Torts § 766 (1979) ("Restatement"); *see Bricker v. Crane,* 118 N.H. 249, 252, 387 A.2d 321, 323 (1978); *Griswold v. Heat Corporation,* 108 N.H. 119, 124, 229 A.2d 183, 187 (1967). "An action for intentional interference with contractual relations cannot succeed, however, where the defendant's actions were justified under the circumstances." *Bricker v. Crane, supra* (and cases therein cited). Pursuit in good faith of the best interests of a corporation may establish such a privilege. *Griswold v. Heat Corporation, supra* 108 N.H. at 125, 229 A.2d at 188. Restatement § 773. Whether or not Knickerbocker's actions in obtaining or enforcing this copyright were fraudulent or in good faith is a disputed question of fact precluding summary judgment.

St. James moves for summary judgment on its claim for "unfair competition", relying on theories of "disparagement of property", "slander of goods", or "trade libel". *See* W. Prosser, Torts § 128 (4th ed. 1971) ("Prosser") (discussing the economic tort of "injurious falsehood"). It appears from the pleadings, which allege diversity jurisdiction, that this claim is also based on state law; however, St. James has cited no New Hampshire authority in support of its motion. While the Court through its own research has identified New Hampshire cases on the subject of defamatory injury to profession or business,[25] it is not entirely clear—nor would it be proper to assume—that the tort St. James seeks to allege (and applicable affirmative defenses) and the causes of action discussed in the cases at n. 25, *supra,* are one and the same. In short, the counterclaim is not properly presented on motion for summary judgment, and summary judgment is herewith denied.[26]

### Plaintiff's Motion to Strike

Pursuant to Rule 12(f), Fed.R. Civ.P.,[27] Knickerbocker moves to strike paragraph 30 of St. James' Answer because it states an insufficient defense as a matter of law. A motion to strike is generally disfavored, and will be allowed only where the Court is "convinced that there are no disputed questions of fact, that the questions of law are clear and settled, and that under no circumstances could the defense prevail". *Green Mountain Power Corporation v. General Electric Corporation,* 496 F.Supp. 169, 171 (D.Vt.1980); *see also Meinrath v. Singer Company,* 87 F.R.D. 422, 429 (S.D.N.Y.1980); *Gilbert v. Eli Lilly & Co., Inc.,* 56 F.R.D. 116, 121 (D.P.R.1972). Where it is clearly apparent that the de-

---

Hampshire law. For purposes of this motion, therefore, the Court treats New Hampshire law as the governing law.

**25.** *Thomson v. Cash,* 119 N.H. 371, 402 A.2d 651 (1979); *Chagnon v. Union Leader Corporation,* 103 N.H. 426, 174 A.2d 825 (1961), *cert. denied,* 369 U.S. 830, 82 S.Ct. 846, 7 L.Ed.2d 795 (1962); *Wier v. Allen,* 51 N.H. 177 (1871); *Harris v. Burley,* 8 N.H. 216 (1836).

**26.** Looking to Prosser alone, the result would be no different. Good faith enforcement of a copyright interest is privileged. *Id.* § 128 at p. 925. For the reasons discussed above, the defense currently presents factual questions to be resolved by the trier of fact.

**27.** Rule 12(f) authorizes a court upon motion or upon its own initiative to strike "from any pleading any insufficient defense...."

fense pled is insufficient as a matter of law, the motion may be granted. *Kelly v. Kosuga,* 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475 (1959); *U.S. Oil Company, Inc. v. Koch Refining Company,* 518 F.Supp. 957, 959 (E.D. Wis.1981); *Texidor v. E.B. Aaby's Rederi A/S,* 354 F.Supp. 306, 308–09 (D.P.R.1972).

While the traditional 'disfavor' of a motion to strike stems from its potential for abuse as a dilatory tactic, this drawback must be balanced against the motion's intended use as 'the primary procedure for objecting to an insufficient defense,' 5 Wright & Miller, *supra* at 782. Weeding out legally insufficient defenses at an early stage of a complicated law suit may be extremely valuable to all concerned 'in order to avoid the needless expenditures of time and money,' in litigating issues which can be foreseen to have no bearing on the outcome. *Purex Corp., Ltd. v. General Foods Corp,* 318 F.Supp. 322, 323 (C.D.Cal.1970).

*Narragansett Tribe of Indians v. Southern Rhode Island Land Development Corp.,* 418 F.Supp. 798, 801 (D.R.I.1976).

The challenged defense is set forth in paragraph 30 of St. James' Answer as follows:

Third party defendant states that it has a license to manufacture its stuffed rag dolls by its purchase of a commercial pattern sold by McCall Pattern Company bearing a copyright notice of said McCall and Bobbs-Merrill Company, Inc.

St. James has cited no authority to support the contention that the defense is legally sufficient.

Section 202 of the Copyright Act of 1976 provides, however:

'Ownership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied. Transfer of ownership of any material object, including the copy or photorecord in which the work is first fixed, does not of itself convey any rights in the copyrighted work embodied in the object; nor, in the absence of an agreement, does transfer of ownership of a copyright or of any exclusive rights under a copyright convey property rights in any material object.'

*See also* § 27 of the 1909 Act, 17 U.S.C. § 27 (1909). Professor Nimmer has succinctly stated the law under both the 1909 and 1976 Acts thus:

[I]nsofar as a work was protected by statutory copyright prior to 1978, the current Act merely restates what was recognized under the 1909 Act, and prior copyright laws. That is, it has long been recognized that the sale or other transfer of a material object embodying a work protected by statutory copyright does not in itself constitute an assignment or license of such copyright. Furthermore, the fact that the sale of the tangible object is made by an authorized licensee does not mean that any greater rights are conveyed by reason of such sale than would be the case if the sale were made directly by the copyright proprietor.

2 Nimmer § 10.09[A] p. 1072 (footnotes and cases omitted). In a case closely analogous to the one at bar, the Supreme Court held that the purchaser of a copperplate engraving at a sheriff's sale did not acquire the right to commercially print, publish, and vend the copyrighted map printed on its face. *Stephens v. Cady,* 55 U.S. 528, 14 How. 528, 14 L.Ed. 528 (1852). Because the sale of the pattern cannot confer a *license* [28] upon St. James to commercially produce and market the dolls, the defense is insufficient as a matter of law, and Knickerbocker's motion to strike is granted.

Accordingly, the Court hereby finds and rules that:

---

**28.** *This is not to say that the existence, sale, and use of the pattern may not provide St. James with some other defense. Alternatively, if the Raggedy Ann and Raggedy Andy dolls* have fallen into the public domain, as St. James has suggested, the license issue may be an irrelevancy.

1. Knickerbocker's Motion to Amend Complaint is granted;

2. St. James' Motion to Strike Knickerbocker's Amended Reply is now moot;

3. Knickerbocker's Motion to Strike Pamela Ross Affidavit is denied;

4. St. James' Motion to Strike Knickerbocker's June 17 Submission is denied;

5. St. James' Motions for Summary Judgment are denied;

6. St. James' Motion for Declaratory Judgment is denied;

7. Knickerbocker's Motion to Dismiss Antitrust Counterclaim is granted without prejudice;

8. Knickerbocker's Motion to Strike Affirmative Defense is granted; and

9. The amended complaint shall be filed within 30 days of this Order; responsive pleadings, including any amended counterclaims, shall be filed in the time periods prescribed by the Federal Rules of Civil Procedure.

SO ORDERED.

DESIGN.

J. B. GRUELLE.

DOLL.

APPLICATION FILED MAY 28, 1915.

D 47,789.

Patented Sept. 7, 1915.

*Fig. 2*

*Fig. 1*

INVENTOR

John B. Gruelle

BY

Emery Booth Janney & Varney

ATTORNEYS

## APPENDIX B
## VOLLAND RAGGEDY ANN AND RAGGEDY ANDY

---

*Pin Full Payment With Subscribers' Names and Addresses to This Coupon:*

**CURTIS PUBLISHING COMPANY**
308 Independence Square, Philadelphia, Pennsylvania

Here are......... subscriptions sold to folks outside my own home at these prices: Ladies' Home Journal, $1 for 1 year (U. S. A.); The Saturday Evening Post, $2 for 1 year (U. S. A.). Send Ann...... Andy..... ... Both Dolls......

Your Name.............................................................................................................................................

Street..........................................................................................................................................

City............ ......................................................................... State..... ...... ....................................

---

# "HOWDY, FOLKS"...

Ann is all dressed up in a gay print with ruffly lawn apron. Andy wears overalls, checked shirt and round gob hat. All clothes button and unbutton for laundering.

### I'll Give You Either Doll!

## RAGGEDY ANN or ANDY!

Here they are . . . 22 inches tall and a riot of fun!

HOW little folks will love them and big girls adore them for their rooms!

Yours—either doll—if you send only three 1-year subscriptions for Ladies' Home Journal, sold at the full price to persons outside your own home ($1.00 each, U. S. A. only). Or you may have both dolls for three 1-year Journals at $1.00 each (U. S. A.) and one 1-year subscription for The Saturday Evening Post (sold at $2.00, U. S. A. only).

Full payment (made by either Money Order or Check) must be sent with order.

1328

APPENDIX C-1
GEORGENE RAGGEDY
ANN # 1

APPENDIX C-2
GEORGENE RAGGEDY ANN # 2

APPENDIX C-3
GEORGENE RAGGEDY ANN # 3

APPENDIX C-3
GEORGENE RAGGEDY ANDY # 3

APPENDIX D-1
KNICKERBOCKER RAGGEDY ANN

RAGGEDY ANN

© knickerbocker TOY CO. INC.

APPENDIX D-2
KNICKERBOCKER RAGGEDY ANDY

RAGGEDY ANDY

● knickerbocker TOY CO. INC.

1334

APPENDIX E
St. James "Ma Shag" doll